## STATE ex rel. PEREA et al. v. BOARD OF COMMISSIONERS OF DE BACA COUNTY et al.

### SYLLABUS BY THE COURT.

1. A "ministerial act" is an act which an officer performs under a given state of facts, in a prescribed manner, in obedience to a mandate of legal authority, without regard to the exercise of his own judgment upon the propriety of the act being done. Held, that chapter 11, Laws 1917, requiring the board of loan commissioners to determine the amount of indebtedness owing by certain counties, from parts of which ·a new county was created, and to apportion such debts between the new county and the old counties upon the basis of the assessed valuation which the property taken from the old county bore to the total assessed valuation in such old county, did not confer upon such board judicial powers.     P. 340

2. Sections 9, 10, and 11, c. 11, Laws 1917, construed. Held, that De Baca county was liable for its pro rata share of the total indebtedness of the counties from which it was carved.     P. 342

3. The apportionment of debts and property between two counties, upon division, belongs exclusively to the Legislature. The legislative will in the matter is supreme in the absence of constitutional requirements.     P. 342

### On Motion for Rehearing.

4. Section 10, article 9, of the Constitution, which limits the right of a county to issue bonds, has no application to the right of the Legislature, in the creation of a new county, to fix the liability of a new county to the parent county and to require the new county to issue bonds therefor.     P. 344

Appeal from District Court, De Baca County; Richardson, Judge.

Mandamus by the State, on the relation of Florentino Perea and others, against the Board of County Commissioners of De Baca county and others. From an adverse judgment, plaintiffs appeal. Reversed and remanded, with directions, and rehearing denied.

CHESTER A. HUNKER, CHAS. W. G. WARD, and JOHN D. W. VEEDER, all of Las Vegas, for appellants.

H. R. PARSONS, of Ft. Sumner, for appellees.

## OPINION OF THE COURT.

ROBERTS, J.   The county of De Baca was created by chapter 11, Laws 1917, out of portions of Guadalupe, Chaves, and Roosevelt counties.   Chapter 16, Laws 1912 (chapter 91, Code 1915), created the board of loan commissioners of the state of New Mexico, composed of the attorney general, state treasurer, and state auditor, for the purpose of fixing and determining the indebtedness ·to be assumed by the state under the Enabling Act and the Constitution of New Mexico, and refunding the same. The act creating De Baca county provided that the board of loan commissioners should ascertain the total indebtedness of the counties of Chaves and Guadalupe, less the amount of cash on hand, to meet such indebtedness at the time the act went into effect, and that from the assessment rolls for the year 1916 such board should ascertain the total value of the taxable property in each of said counties and the total value of the taxable property in the area taken from each of said counties to form the county of De Baca, and the indebtedness owing by each of the parent counties, and that De Baca county should pay its proportionate part of such indebtedness based on the said assessed valuation of the part so taken, compared with the assessed valuation remaining in the parent county.

The board of loan commissioners determined that the act required the payment by De Baca county to the county of Guadalupe of its proportionate part of the total indebtedness of Guadalupe county owing at the time the new county was created.   The county commissioners of De Baca county dispute the liability of the new county as to all of the indebtedness of Guadalupe county, save the bonded indebtedness.   The board of loan commissioners held that De Baca county should pay to the county of Guadalupe the sum of $28,571.52, which represented its part of the total indebtedness of Guadalupe county.   The commissioners of De Baca county admitted a liability of $12,144.75 only.

Suit in mandamus was instituted by the board of com-

missioners of Guadalupe county against the board of
commissioners of De Baca county to require such board
to issue the bonds of the new county in the sum fixed by
the board of loan commissioners.   The case was heard in
the district court upon stipulated facts.   It is agreed
that the amount fixed by the board of loan commission-
ers is correct if De Baca county is liable for its propor-
tionate part of the total indebtedness of Guadalupe
county.   On the other hand, if liable only for its pro-
portionate part of the bonded indebtedness, the amount
which it should pay is $17,021.60.

The trial court held that De Baca county was liable
only for its pro rata share of the bonded indebtedness,
and that under the legislative act it was not required to
pay a part of the floating indebtedness of Guadalupe
county.   To review this judgment this appeal is prose-
cuted by the board of commissioners of Guadalupe
county.

Two questions are presented for determination, viz.:
First, did the act in question confer upon the board of
loan commissioners judicial powers in contravention of
the Constitution of the state? and, second, was De Baca
county, under the terms of the act, required to pay to
Guadalupe county only its proportionate part of the
bonded indebtedness of the parent county, or its pro-
portionate part of the total indebtedness? The first ques-
tion requires only passing notice.   The act creating the
board of loan commissioners and the act now under con-
sideration did not attempt to confer upon such board
judicial powers.

[1]   A ministerial act is an act which an officer per-
forms under a given state of facts, in a prescribed man-
ner, in obedience to a mandate of legal authority, with-
out regard to the exercise of his own judgment upon the
propriety of the act being done.   Ellingham v. Dye, 178
Ind. 336, 99 N. E. 1, Ann. Cas. 1915C, 200; Rains v.
Simpson, 50 Tex. 495, 32 Am. Rep. 609.   And, as said
by the Indiana Supreme Court in Flournoy v. City of
Jeffersonville, 17 Ind. 169, 79 Am. Dec. 468:

"The act is none the less ministerial because the person performing it may have to satisfy himself that the state of fact exists under which it is his right and duty to perform."

Under the act creating the board of loan commissioners and the act now under consideration, such board was only required to determine the amount of indebtedness owing, and in the case of De Baca county the assessed valuation of the property taken from the parent county and put into the new county and the proportionate part which such value bore to the total valuation of the property of the old county as it originally existed. This was not a judicial function, but a ministerial act.

The main point is as to whether De Baca county was liable for its pro rata share of the total indebtedness, or only the bonded indebtedness of the parent county. Section 9 reads as follows:

"As soon as practicable after this act goes into effect, the board of loan commissioners of the state of New Mexico shall ascertain the total indebtedness of the counties of Chaves and Guadalupe, less the amount of cash on hand to meet such indebtedness, at the time this act shall go into effect; and from the assessment rolls for the year 1916 said board shall ascertain the total value of the taxable property in each of said counties and the total value of the taxable property in the area taken from each of said counties to form the county of De Baca.

"Thereupon said board shall determine the amount of such indebtedness, less cash on hand to meet the same, which should be paid by De Baca county to said counties of Chaves and Guadalupe, respectively, being the portion of such net indebtedness determined by the ratio which the value of the taxable property in the area  *  *  *  of said last mentioned counties bears to the total value of the taxable property in the area so taken from each of said last mentioned counties bears to the total value of the taxable property in such county as shown by said assessment roll. The amounts so found by said board of loan commissioners to be due from De Baca county to Chaves and Guadalupe counties, respectively, are hereby declared to be due and such determination by said board shall be final and conclusive upon each and all of said counties, and said board shall forthwith certify the said amounts to the several boards of county commissioners of said counties."

Section 10 provides for the issuance of bonds by De Baca county to enable it to pay the amount found due

by the board of loan commissioners to the two counties and the amount fixed by the act as to Roosevelt county. Section 11 provides for the sale of the bonds and the payment to the three counties of the amount so ascertained and fixed. It further provides that, if the sale of the bonds cannot be made by the 1st day of January, 1918, then in such event the bonds are to be assigned to the counties. Section 11 contains a proviso, a portion of which reads as follows:

"Provided, however, that the said bonds or the proceeds thereof, as the case may be, received by the said counties of Chaves, Guadalupe and Roosevelt, respectively, are hereby expressly dedicated and reserved to the liquidation, or partial liquidation, of the bonded indebtedness of the said counties of Chaves, Guadalupe and Roosevelt, respectively, and the said bonds, or the proceeds thereof, shall not be utilized for any other purpose than that herein specifically provided for."

[3] This proviso gives rise to the present contention by reason of the reference therein to the bonded indebtedness of the parent counties; it being appellee's contention, in which it was sustained by the district court, that by use of the words "bonded indebtedness" in the proviso the Legislature thereby manifested an intention that the new county should only be liable to the parent counties for its proportionate part of the bonded indebtedness. The apportionment of debts and property between two counties, upon division, belongs exclusively to the Legislature. 7 R. C. L. p. 933. The legislative will in the matter is supreme. It may, as between the counties, require the parent county to pay all the debts or require their payment by the new county. The legislative will being supreme in the matter, it may state upon what terms and conditions the new county shall be created; no constitutional provision existing to the contrary.

[2] Under the present statute, absent the proviso, there would not be the slightest doubt but that it was the legislative will that De Baca county should be liable for and required to pay to Chaves and Guadalupe counties its proportionate part of the total indebtedness of such counties, which, of course, would include floating indebtedness as well as bonded indebtedness, as deter-

mined by the board of loan commissioners. Does the proviso require a different construction? We think not. It merely undertakes to make provision for the disposition and application of the moneys received by the parent counties from the new county and directs that the bonds or proceeds of the bonds shall be applied "to the liquidation, or partial liquidation, of the bonded indebtedness of the said counties of Chaves, Guadalupe and Roosevelt.'' In the proviso the Legislature was not dealing with the question of the amount of indebtedness which De Baca county should assume and pay to the parent county or counties. This had been arranged for by prior provisions of the act. In the proviso they were only providing for the application by the parent counties of the proceeds of the bonds or moneys received from the new county and determined that this money should be wholly applied on the bonded indebtedness of the parent county. As evidence of the fact that they had in contemplation that the moneys received by the parent county from the new county would be more than the new county's pro rata share of the bonded indebtedness, it was provided that the money should be used for the liquidation, or partial liquidation, of the bonded indebtedness; that is, if the amount received would not wholly liquidate the bonded indebtedness, it should nevertheless be applied toward the partial liquidation. In other words, it might be sufficient to liquidate the entire bonded indebtedness. The Legislature evidently determined that it would be advisable that the parent counties should apply the amount so received on the bonded indebtedness owing by them, and that the floating debt should be paid by the old county by the levy of taxes upon the property then remaining. Thus construed, the language of the act is harmonious and clear.

We hold, therefore, that De Baca county was liable to Guadalupe county for its proportionate part of the total indebtedness owing by Guadalupe county at the time of the creation of De Baca county. It results from this holding that the district court was in error in its award.

For the reasons stated, the cause will be reversed and remanded, with directions to the district court to grant the alternative writ of mandamus; and it is so ordered.

PARKER, C. J., concurs.

RAYNOLDS, J., being absent, did not participate in this opinion.

## On Motion for Rehearing.

ROBERTS, J. [4] Appellee has filed a motion for rehearing, in which it contends that we failed to pass upon its contention that the Legislature was without power to provide for the issuance by De Baca county, upon its creation, of bonds, for the purpose of paying to Guadalupe county its proportion of the floating indebtedness of the parent county, by reason of the provisions of section 10, art. 9, of the Constitution. This provision reads as follows:

"No county shall borrow money except for the purpose of erecting necessary public buildings or constructing or repairing public roads and bridges, and in such cases only after the proposition to create such debt shall have been submitted to the qualified electors of the county who paid a property tax therein during the preceding year and approved by a majority of those voting thereon. No bonds issued for such purpose shall run for more than fifty years."

But it has no application whatever to the creation of counties and the apportionment of debts between the old and new and making provision for their liquidation. To give it the construction for which appellee contends would deprive the Legislature of the right to say upon what terms and conditions a new county should be created. The Legislature said the new county should issue its bonds to the parent county for its pro rata share of the indebtedness of the old county, both bonded and floating. It could legally have required the new county to have issued to the old county a fixed amount of bonds, without regard to the indebtedness, or whether there were any debts. Its will in the matter, as we have said in the former opinion, is supreme.

For the reason stated, the motion for rehearing will be denied; and it is so ordered.

PARKER, C. J., concurs.