274 P.2d 299

Pauline E. McCORMICK, Plaintiff-Appellee,

v.

BOARD OF EDUCATION OF HOBBS MU-NICIPAL SCHOOL DISTRICT NO. 16, Lea County, New Mexico, Carl P. Rodolph, George Mansur, Dick Kimbrough, E. C. Hutchinson and Dr. D. C. Badger, Defendants-Appellants.

No. 5707.

Supreme Court of New Mexico.

Sept. 14, 1954.

Neal & Girand, Hobbs, for appellants.

Reese, McCormick, Lusk & Paine, Carlsbad, for appellee.

SEYMOUR, Justice.

The facts found by the trial court are quoted in full because they clearly present the factual and legal problems before the Court, and because appellants' exceptions to these findings, as subsequently demonstrated, do not disturb or attack the facts which we deem controlling of our decision.

They are as follows:

"1. Plaintiff was employed as a classroom teacher in the elementary grades in the Hobbs Public Schools for six consecutive years commencing with the school year 1946–1947 and until the close of the school year 1951–1952.

"2. Each year of employment was evidenced by a written contract between the parties. At the time of transmitting the contracts for the first three school years the defendants sent plaintiff a letter stating in substance

that she had been approved *for tenure*. The three letters accompanying the last three contracts stated in substance that the plaintiff had been approved *for continuation* on tenure.

"3. In 1946 the State Board of Education issued to plaintiff a 5-year Master Elementary Teacher's Certificate and in 1951 issued to plaintiff another 5-year Master Elementary Teacher's Certificate. Both certificates were on the standard forms used by the State Board of Education and were not War Emergency Certificates.

"4. Prior to 19 March 1948 the defendants had adopted no rules or regulations setting up professional qualifications for classroom teachers. On 19 March 1948 the Board of Education of Hobbs Municipal School District adopted certain rules, regulations and conditions of employment which were stated to be considered by the employer and employee as a part of the contract. One of such regulations was that a teacher in the elementary grades have the equivalent of a major in elementary education. Plaintiff had a B.A. degree which was granted to her in 1931. However, her credits did not amount to a major in elementary education on 19 March 1948.

"5. During the school year 1948–1949, plaintiff had conferences with her supervisors and with the superintendent of the Hobbs Municipal School District, as a result of which said superintendent recommended to plaintiff that she take summer school work and correspondence work with the view of bringing her credits up to a major in elementary education, which plaintiff agreed to do. Thereafter plaintiff took courses of instruction at New Mexico Eastern University at Portales and at New Mexico Highlands University at Las Vegas, and earned sufficient credits so that at the beginning of the school year 1950–1951 her credits amounted to a major in elementary education.

"6. The last year that plaintiff taught in Hobbs Public Schools, she had a major in elementary education and the last contract which she actually entered into with the defendants was made after she had acquired such credits.

"7. On 22 May 1952 plaintiff was advised by letter from defendants that they had determined to discontinue her services following completion of the school year 1951–1952. Said letter also advised that a hearing would be held before the defendants on 30 May 1952 at which she could appear. Plaintiff attended such hearing and following the same and on 3 June 1952, she received a notice from the defendants that they had again determined not to renew her teaching contract.

"8. At such hearing on 30 May 1952, and in correspondence relative thereto, defendants did not contend that the plaintiff was not entitled to tenure, but based their action on alleged infractions of rules.

"9. At no time during the last three years of her employment did defendants advise plaintiff that she did not have tenure, but on the contrary advised her that she was continued on tenure.

"10. Pursuant to provisions of Section 55-1111 N.M.S.A.1941 as amended, plaintiff on 7 June 1952 filed an appeal to the State Board of Education of the State of New Mexico.

"11. On July 22nd and 23rd, 1952, in Santa Fe, New Mexico, the appeal of the plaintiff was heard by the State Board of Education. No transcript was made of the evidence received at such hearing.

"12. As a result of such hearing and on 24 July 1952 the State Board of Education entered an order sustaining the appeal of the plaintiff, a copy of which order is attached to the application for Writ of Mandamus filed herein by the plaintiff and which order is hereby adopted by reference and the findings of fact therein adopted as findings of fact of this court.

"13. At the hearing before the State Board of Education six duly qualified members of said board were present, one of whom acted as chairman pro tem. The decision of the State Board of Education was made by a vote of 3 for and 2 against, the chairman pro tem abstaining from voting. At the time of such hearing, the State Board of Education had adopted no rules of procedure for the conduct of hearings before it.

"14. Within 15 days following the 24th of July, 1952, the attorney for defendants advised the attorney for plaintiff that he was going to file a motion for rehearing or a motion to reopen the appeal. A 'Motion to Reopen the Appeal' was actually prepared by the attorneys for defendants and mailed to the State Board of Education at Santa Fe, New Mexico, before the expiration of the 15 day period but was not received by the State Board of Education until after the expiration of said period. Plaintiff had planned to file with defendants an acceptance of employment for the school year 1952–1953 within the 15 day period mentioned in Section 55–1111 N.M.S.A. 1941 as Amended. After being advised of such contemplated action by attorney for the defendants, the attorney for plaintiff advised his client that it would be unnecessary to file such written acceptance until final action on such motion.

"15. The 'Motion to Reopen the Appeal' filed by defendants with the State Board of Education was denied by that Board on 22 August 1952 and on 25 August 1952, the plaintiff by letter offered to accept employment as a teacher in the Hobbs Public Schools for the school year 1952–1953 and offered to execute a contract therefor.

"16. On 25 August 1952 the defendants advised plaintiff that they would refuse to abide by the order of the State Board of Education and refused to enter into a contract with plaintiff.

"17. At all times material hereto plaintiff has been ready, able and willing to enter into a contract to teach during the school year 1952–1953 and could have performed such contract had she entered into it. Had such contract been made, she would have earned as a result thereof $3,970.00 from the defendants.

"18. That plaintiff at all times taught in the intermediate grades in Hobbs Municipal School District.

"19. That the reasons for the discharge of the plaintiff were found by the State Board of Education as set out in the findings of fact which are a part of Exhibit 'A' to the Alternative Writ of Mandamus."

Based upon the foregoing findings of fact, the trial court in seven conclusions of law determined: (1) That the defendants' 1948 conditions of employment did not deprive plaintiff of the right to acquire tenure or interrupt her probationary period because plaintiff was entitled to a reasonable time to meet the more onerous conditions and did so. (2) That defendants are estopped to deny tenure by reason of their letter assurances to Mrs. McCormick that she did have tenure. (3) That said assurances of tenure waived strict enforcement of the conditions of employment. (4) That plaintiff filed timely acceptance. (5) That the state board decision was not arbitrary or unlawful and was binding upon the trial court. (6) That § 55–1111 as amended, and § 55–101, N.M.S.A.1941 do not violate the Constitution of New Mexico. (7) That the alternative writ of mandamus be made permanent.

█ Referring now to the parties as they are designated in this Court, appellants except to the first sentence in finding "4" on the theory that the rules and regulations setting up professional qualifications for classroom teachers, and formally adopted in 1948, were in fact the rules in practice and effect for many years previous. Our decision is not affected by this factual difference. Appellants' exception to finding "8" is immaterial since our decision assumes that appellants asserted lack of tenure on the part of appellee throughout all proceedings. Appellants assign as error finding "9"; we fail to find any exception

addressed to this finding but, regardless of that fact, there is no question whatever, that there is substantial evidence to support it. Appellants except to finding "14," on which exception we make no comment here because it is the subject of a separate point in appellants' brief, and the question raised is of a technical, isolated nature unimportant to the balance of the decision. It will be treated subsequently.

From the foregoing it is apparent that the case is presented to this Court on a basis similar to a case submitted upon a stipulation of facts. The first point relied upon by appellants for reversal reads as follows:

"A teacher in order to be entitled to the benefits of Section 55–1111 of the New Mexico Statutes, Annotated, Compilation of 1941, as amended, commonly known as the Teacher's Tenure Act, must have the educational qualifications required by the local board at the time she starts her probationary period."

On this contention, we must rule against appellants. In support thereof, appellants cite the following portion of § 55–1111, supra:

"* * * Provided further that teachers holding war emergency certificates and *teachers whose professional qualifications are otherwise below those required by the governing boards* or teachers employed to fill positions of teachers who have entered the military service shall not be entitled to the benefits specified in this act." (Emphasis added.)

Appellants then turn to the rules and regulations of the Hobbs board formally adopted in 1948, the subject of finding "4." A mimeographed copy of these rules and regulations, which were reduced to writing in 1948, was forwarded each year to appellee with her letter notification of employment for the coming year. The rules and regulations were deemed to be a part of and incorporated in the individual teacher's contract, and among the conditions of employment in the Hobbs Municipal Schools was the following requirement: "5. A major in primary education for teachers in the primary grades (1, 2 and 3), a major in elementary education for teachers in the intermediate grades (4, 5 and 6) * * *." It is therefore the position of appellants that appellee knew that her professional qualifications were below the standard required by the governing board and, as a consequence thereof under the foregoing quoted portion of the statute, she was not entitled to the benefits of the tenure act.

This argument requires an interpretation of the quoted portion of the tenure act to the effect that one of the benefits of the act is the serving of the probationary period. We see no justification for such an interpretation. The substantial benefits conferred upon teachers by the tenure act

revolve around the security of employment which is achieved by satisfactory performance of services through the probationary period *and* the attainment of proper professional qualifications by the time a teacher goes on tenure. Recognizing this purpose of the statute, and also recognizing that the interests of the parents and children in the selection of proper teachers is of an importance equal to the protection of the teachers, we fail to see any guarantee of improvement in standards or any better opportunity to evaluate teachers which would result in making mandatory the acquisition of these professional standards prior to the commencement of the probationary period. If this were a matter of paramount importance, we do not think that the legislature and the school system would have set up such a complete machinery for temporary, substitute and emergency teachers. In short, we deem the probationary period addressed not only to the observation of the teacher in his or her dealing with parents, children and staff, but as a period in which the teacher may perfect the professional qualifications required for the protection of the tenure act, unless otherwise specifically provided by local regulations.

That the foregoing interpretation is actually in line with the practice and policy of the school system is apparent by a more complete reading of the rules and regulations of the Hobbs Board of Education.

A copy of these appears in the record, entitled, "Conditions of Employment Leading to Tenure or Continuation on Tenure * * *." and reads in part as follows:

"B. Teachers shall be elected subject to the state uniform contract . . and subject to the regulations pertaining to special requirements and qualifications required of regular teachers as are in effect in the Hobbs Municipal Schools, namely:

\* \* \* \* \* \*

"5. * * * a major in elementary education for teachers in the intermediate grades, * * * unless the teacher shortage requires temporary retrenchment from these standards.

\* \* \* \* \* \*

"8. Substitute, temporary, or emergency teachers shall not be considered as eligible for tenure or permanent employment.

"C. No teacher shall be eligible for tenure if requirements listed above under 'B' and below under 'G' are not met.

\* \* \* \* \* \*

"G. *The superintendent shall be authorized to specify deficiencies which are to be corrected during the intervals between school terms* and shall require all staff members as a policy a minimum of 24 professional growth points during any given three year period as specified in 'The In-Service Growth and De-

velopment Program of the Hobbs, New Mexico, Municipal Schools,' the same being part of these conditions of employment." (Emphasis added.)

A reading of these rules and regulations leaves little doubt of the fact that the Hobbs board contemplated the acquiring of necessary professional qualifications during the probationary period leading up to tenure. This conclusion seems inescapable when we read the letter notification of employment sent to appellee by the Superintendent of Schools in Hobbs in 1949:

"March 24, 1949

"Dear Mrs. McCormick:

"You are hereby officially notified

"(1) That you have been approved for tenure in the Hobbs Municipal Schools by the Board of Education for the year, 1949–50, contingent upon your doing additional study this summer, details of which you are kindly requested to work out in conference with me, and with the understanding that you also meet the conditions, policies, rules, and regulations of employment in the Hobbs Municipal Schools, a copy of which is enclosed, * * *."

We need not decide whether appellee acquired tenure in 1949 pursuant to the above quoted letter. By virtue of the extra work performed by appellee, she achieved the required professional standard of a major in elementary education in 1950. Under that portion of the tenure act heretofore

quoted, the Hobbs board may have acted precipitously in placing her upon tenure prior to the attainment of the professional qualifications required by their rules. However, substantially identical letters, omitting the contingency of summer study, were forwarded to her March 31, 1950 and March 28, 1951. On this later date, there is no question that she was professionally qualified to receive the benefits of the tenure act. Since our question is addressed exclusively to whether or not appellee was on tenure at the time the Hobbs board attempted to discharge her, which status we believe she held of necessity on receipt of the letter of March 28, 1951, it is unnecessary for us to determine her status in 1949. We conclude, therefore, with regard to this contention of appellants that appellee had tenure at the time this controversy arose.

Appellants' Point II asserts that appellee did not accept employment within fifteen days after the decision of the State Board of Education as required by the following sentence in § 55–1111, supra:

"Where a teacher is employed as provided herein such teacher shall within fifteen (15) days from the closing day of school or within fifteen (15) days after a decision is rendered by the state board of education in case of an appeal to said board, either accept or reject in writing such employment and a contract covering said employment shall be ex-

ecuted as soon as practicable and not later than ten (10) days before the opening of the next school term."

Finding of fact "14" quoted above covers the facts addressed to this point. On the ground of insufficient evidence, appellants excepted to that portion of the finding stating that appellee had planned to file an acceptance of employment within the fifteen-day period. The exception is without merit in view of the fact that a statement was made into the record by attorney for appellee substantially to this effect, and without exception by appellants; it is sufficient to support the finding made by the trial court. Appellee made the required acceptance within fifteen days after the state board's decision denying appellants' motion to reopen the appeal. Since appellants were the parties asking rehearing, they cannot now take the position that the granting of rehearing by the state board would have been improper in any event and reason therefrom that the motion did not toll the fifteen-day period. Such a contention falls within the field of invited error and must be denied.

 Appellants' Point III reads as follows:

"The State Board of Education in acting on an appeal from the discharge of a teacher by a local board of education should overrule the action of the local board only if the facts disclose that the local board acted arbitrarily, unlawfully, unreasonably or capriciously."

Assuming that this contention is correct as a matter of law, we believe that the state board was justified in reversing the decision of the Hobbs board on the ground that the local board acted arbitrarily and unreasonably. It is needless here to quote in full the findings of the local school board made upon the evidence presented in support of the charges for dismissal or the findings of the state board following a trial de novo on appeal. Typical of these were: That over a period of six years, appellee was late to school on two occasions, one of these resulting from the fact that she drove another teacher to work at another school; another finding was to the effect that appellee was found smoking on one occasion in her classroom, this incident occurring after the school term had ended for the children; another finding cited an occasion on which appellee helped the pupil of another teacher with his spelling after regular classroom hours. This was done at the request of the pupil, appellee receiving no pay; and being asked by school officers to cease the practice, she did so. The other findings were of a uniform character. The state board concluded and decided:

: "After a full consideration of the evidence, much of which this Board regards as trivial, and with due regard

to the findings of fact set out herein, the Board concludes:

"1. That the charges for dismissal brought against appellant (appellee in this Court) are not substantiated by the evidence to such an extent as to justify dismissal."

If, we had for decision the question of whether or not the state board correctly ruled that the local board's action was arbitrary and unreasonable, a careful reading of all the charges and findings would lead us to the conclusion that the state board was entirely right in its decision. In reality, the proper question presented to us for decision is whether or not the conclusion of the state board in reaching its decision was arbitrary, unreasonable and capricious. Since we reached the first conclusion concerning the local board's action, our conclusion that the state board was not acting arbitrarily follows as a matter of course.

If there were matters in the mind of the local board concerning the fitness of appellee to serve as a teacher in the Hobbs school system other than those appearing in the record, we are foreclosed from any consideration of such factors. The case must be determined upon the facts incorporated in the record before us.

Under Point IV, appellants assert that Ch. 89, Laws 1949, being § 55–1111, supra, pocket supplement, is so vague, indefinite and uncertain that it is unconstitutional. It is contended that the statute wholly fails to give a legislative standard upon which the administrative board can act in determining whether or not the causes for the termination of the employment of a teacher by a local board are sufficient. In support of this contention is cited the case of State ex rel. Sofeico v. Heffernan, 1936, 41 N.M. 219, 67 P.2d 240. Secondly, it is contended that the statute provides only that teachers holding a contract for a fourth consecutive term are entitled to the benefits of the tenure act and that nothing is said concerning the acquisition of tenure by a teacher holding a contract for a fifth or a later consecutive term.

 We find no merit in either of these contentions. In the first place, the State Board of Education is a constitutional body created by Art. 12, § 6, N.M. Const., and it is given the "control, management and direction of all public schools, under such regulations as may be provided by law." The statute involved in the Heffernan case, supra, did not have the dignity of a constitutional grant of power. The Court there said that generally a statute vesting arbitrary discretion in public officials without prescribing uniform rules of action is unconstitutional and void. In the instant case, the constitution itself

gives the State Board of Education the control, management and direction of all public schools. In addition to this distinction, the Heffernan case, quoting 12 A.L.R. 1447, goes on to state that it is also well settled that " 'some situations require the vesting of some discretion in public officials, as, for instance, where it is difficult or impracticable to lay down a definite, comprehensive rule, or the discretion relates to the administration of a police regulation and is necessary to protect the public morals, health, safety, and general welfare.' " Absent the first distinction made above, certainly the area covered by the statute here in question falls within the category covered by the last quoted portion of the Heffernan case. [41 N.M. 219, 67 P.2d 245.]

■ As to the second ground asserted against the constitutionality of this act, it is our conclusion that the acquisition of tenure by a teacher holding a contract for a fourth consecutive term, as provided by the act, carries with it the implicit right of a teacher to acquire tenure under proper circumstances at the commencement of a fifth or any subsequent consecutive term. The fourth consecutive term is a minimum standard.

Appellants' fifth point reads as follows:
"Chapter 89 of the Laws of 1949 and Section 55–101 of the New Mexico Statutes Annotated, Compilation of 1941, are unconstitutional and void under the provisions of Article 3, Section 1 of the Constitution of the State of New Mexico."

This article provides for the separation of the powers of the government of this state into three distinct departments, the legislative, the executive and the judicial. Appellants argue that the board of education is a part of the executive department of the state and that it has been given judicial powers under § 55–101, N.M.S.A.1941, in violation of this article, further contending for the unconstitutionality of this act because there is no provision for judicial review.

■ There is no merit in this contention. All constitutional provisions have equal dignity. Article 3, § 1 of the Constitution provides for the separation of powers and is followed by Art. 4 covering the legislative department, Art. 5 covering the executive department, and Art. 6 covering the judicial department. The State Board of Education is created under Art. 12, N.M.Const., and it was within the power of the framers of the constitution to confer upon this constitutional body such limited judicial powers as it deemed proper. Such judicial powers as have been conferred upon the State Board of Education by the legislature pursuant to § 55–101,

supra, fall clearly within the constitutional authority conferred upon the State Board of Education for "the control, management and direction of all public schools". We see no problem based upon a violation of the separation of powers clause of the constitution. Even without the assistance of the grant of power contained in the New Mexico Constitution, other states have reached the same conclusion under statutes similar to the New Mexico statute. Craig v. Board of Education of City of New York, 1940, 173 Misc. 969, 19 N.Y.S.2d 293, affirmed by the Supreme Court of New York, 262 App.Div. 706, 27 N.Y.S. 2d 993 and subsequently by the New York Court of Appeals, Board of Education of City of New York v. Cole, 285 N.Y. 702, 34 N.E.2d 386; Board of School Com'rs of Prince George's County v. Manning, 1914, 123 Md. 169, 90 A. 839; In re O'Neil, 1911, 71 Misc. 469, 130 N.Y.S. 446; Underwood v. Board of County School Com'rs, 1906, 103 Md. 181, 63 A. 221; Wiley, Trustees v. Board of County School Com'rs of Allegany Co., 1879, 51 Md. 401.

 Under the foregoing reasoning and cases, it is our conclusion that there is no unconstitutional infringement upon the judicial branch of government by the act in question; that, within the limited area prescribed by Art. 12 of the constitution, the decisions of the board of education are final and conclusive as between the parties, and not subject to review. This conclusion, however, does not deprive the courts of jurisdiction of the many purely legal questions which may arise in connection with the teacher tenure act, and other educational acts, such as the question here presented as to whether or not appellee had tenure; and, as suggested in the discussion of the preceding point, the action of the State Board of Education would be subject to review on the ground that it was wholly arbitrary, unlawful, unreasonable or capricious.

 Appellants' sixth point asserts that the vote of the state board on appeal from the local board, being three in favor of reversal and two in favor of affirmance, the state board being composed of five members plus the governor and the state superintendent as ex-officio members, was ineffective as a decision of the board. The record shows that no rules of procedure have been adopted by the State Board of Education. It further shows that this meeting, and the hearing and decision made thereon, were handled in an orderly way and in accordance with the procedure customarily used by this board. Appellants have cited no authority to sustain their position that a three to two vote with six members of the board present; the sixth member being elected president pro tempore and abstaining from voting, is so improper as to negate the action of the board.

In the absence of the adoption of rules of procedure and in the absence of statutory regulation, the generally accepted rules of parliamentary procedure would control. Such rules are stated 67 C.J.S., Parliamentary Law, § 5, pp. 871 and 874, as follows: "In the absence of a contrary provision, a majority of the authorized membership of a body, consisting of a definite number of members, constitutes a quorum for the purpose of transacting business." Under this rule, there was a quorum of the state board present at the hearing. This text further states: (1) "Where a legal quorum is present, the general rule, in the absence of a provision to the contrary, is that a proposition is carried by a majority of the legal votes cast", and (2) "Where a quorum is present, a proposition is carried by a majority of the votes cast, although some of the members present refuse to vote." Tested by the foregoing statements, the action here taken by the state board constitutes a proper and official action of the board. Robert's Rules of Order, Rev.Ed., supports the same conclusion. We see no merit in this contention.

The judgment of the lower court is affirmed.

It is so ordered.

McGHEE, C. J., and SADLER, COMPTON and LUJAN, JJ., concur.