316 P.2d 1069

**STATE of New Mexico on the Relation of HOVEY CONCRETE PRODUCTS COMPANY, Inc., Employers Casualty Company and New Mexico Insurers, Inc., Relators,**

v.

**Edwin L. MECHEM, Governor of the State of New Mexico, Respondent.**

No. 6264.

Supreme Court of New Mexico.

Aug. 30, 1957.

Rehearing Denied Nov. 15, 1957.

Rodey, Dickason, Sloan, Akin & Robb, John P. Eastham, Albuquerque, Seth & Montgomery, Santa Fe, for relators.

Fred M. Standley, Atty. Gen., Robert F. Pyatt, Asst. Atty. Gen., for respondent.

Irwin S. Moise, Lewis R. Sutin and Franklin Jones, Albuquerque, George L. Reese, Jr., Carlsbad, C. M. Neal, Hobbs, and C. S. Neal, Carlsbad, amici curiae.

COMPTON, Justice.

This is an original proceeding in mandamus to compel the Governor to appoint Commissioners to administer the provisions of the Workmen's Compensation Act, Ch. 246, L.1957, 1953 Comp. § 59–10–36 et seq. The Governor declined to appoint the Commission because of doubtful validity of the Act.

The attack on the Act is multiple but the main question is whether it confers an unlawful delegation of judicial power on the commission. We think it does, and we approach the conclusion feeling that the members of the legislature enacting this law labored just as honestly and zealously in their efforts to act within the constitution as do we of the judicial department. We should not presume to strike down the result of their labor unless satisfied beyond

252

all reasonable doubt they went outside the constitution in enacting the challenged law. But deeply rooted in American Jurisprudence is the doctrine that state constitutions are not grants of power to the legislative, to the executive and to the judiciary, but are limitations on the powers of each. No branch of the state may add to, nor detract from its clear mandate. It is a function of the judiciary when its jurisdiction is properly invoked to measure the acts of the executive and the legislative branch solely by the yardstick of the constitution. Article 3, Section 1, New Mexico Constitution provides:

"The powers of the government of this state are divided into three *distinct* departments, the legislative, executive and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments, shall exercise *any* powers properly belonging to either of the others, except as in this Constitution otherwise *expressly* directed or permitted." (Emphasis ours.)

█ Under the Act, recovery of compensation is the exclusive remedy of an employee against his employer and his insurers. The employee may file a claim with the commission for benefits. The employer joins issue by answer, thus we have a controversy between private litigants. Following a hearing before the commission, or an agent or officers designated by it, findings of fact and conclusions of law are made and filed. When filed, the findings are conclusive and final, if supported by substantial evidence, and shall have force and effect of judgments. Appeals granted by the Act are limited to a review of legal questions only; no provision is made for a review of the facts.

█ Clearly there is an unlawful invasion of the constitution. This is not to say that the legislature, in the exercise of its police powers, may not confer "quasi-judicial" power on administrative boards for the protection of the rights and interest of the public in general whose orders are not to be overruled if supported by substantial evidence. For instance, boards regulating common carriers, transportation, telephone, rates, Barber Boards, Medical Boards, Boards of Registration, Tax Boards, Division of Liquor Control, etc. City of Socorro v. Cook, 24 N.M. 202, 173 P. 682; Oliver v. Board of Trustees of Town of Alamogordo, 35 N.M. 477, 1 P.2d 116. See also Trico Electric Cooperative v. Ralston, 67 Ariz. 358, 196 P.2d 470; Floyd v. Department of Labor and Industry, 44 Wash.2d 560, 269 P.2d 563. But nowhere does this power extend to a determination of rights and liabilities between individuals.

Section 1, Article 3, was considered by us in State v. Kelly, 27 N.M. 412, 202 P.

524, 530, 21 A.L.R. 156, wherein a clear distinction was noted between boards and commissions created to administer regulatory laws affecting the general public, and those laws relating to a determination of rights and liabilities between individuals. We quote:

"The rights and liabilities of a private individual are fixed by law and are to be determined by judicial inquiry * * *.

"The fact that an appeal is provided for from the decision of the board of loan commissioners to the district court does not alter the character of the proceedings. * * *"

The principle there announced is sound today and should be reaffirmed. See also In re Opinion of Justices, 87 N.H. 492, 179 A. 344, 110 A.L.R. 819.

Relators cite many cases in which the courts have sustained statutes creating Workmen's Compensation Commissions. Unquestionably, this may be done; however, those statutes are distinguishable from the act in question. Relators start as their leading case, Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598, where the Supreme Court sustained the Longshoremen's and Harbor Workers' Act, 33 U.S.C.A. § 901 et seq., as against the contention that there was an unlawful delegation of judicial power conferred on administrative officers. At first blush, it would seem the decision would settle this case, but not so. It suffices to say that the Federal Constitution fixes no limitation on the creation of inferior courts as does Section 1, Article 6, New Mexico Constitution. See also Laisne v. State Board of Optometry, 19 Cal.2d 831, 123 P.2d 457.

Section 1, Article 6 reads:

"The judicial power of the state shall be vested in the senate when sitting as a court of impeachment, a Supreme Court, district courts, probate courts, justices of the peace, and such courts inferior to the district courts as may be established by law from time to time in any *county* or *municipality* of the state, including juvenile courts." (Emphasis ours.)

The Small Claims Court, Ch. 137, L.1953, was created pursuant to this section.

We think the function to be performed by the commission is clearly a judicial one. The commission is called upon to decide questions of fact between private litigants and is empowered to render decisions that have the force and effect of judgments. Being of the opinion that the commission is clothed with judicial power, the next question to be answered is, is this expressly permitted by our constitution? A reexamination of Article 6, Section 1, supplies an instant answer. The framers of the New Mexico Constitution in this section limited the creation of courts to those named there-

in, and "such courts inferior to the district courts as may be established by law from time to time in any county or municipality of the state, including juvenile courts". Here the legislature has attempted to create an executive agency, clothe it with judicial power, on a parity with district courts, and invest it with state-wide jurisdiction. This cannot be done.

Relators further rely on the following cases among a host of others. Greenarch v. Industrial Commission, 10 Ill.2d 450, 140 N.E.2d 665; Walters v. Blackledge, 220 Miss. 485, 71 So.2d 433; Arneson v. Robinson, 59 Idaho 223, 82 P.2d 249; Ontario Mining Co. v. Industrial Commission, 86 Colo. 206, 280 P. 483; Grant Coal Mining Co. v. Coleman, 204 Ind. 122, 179 N.E. 778; Borgnis v. Falk Co., 147 Wis. 327, 133 N.W. 209, 37 L.R.A.,N.S., 489; State of Washington v. Mountain Timber Co., 75 Wash. 581, 135 P. 645, L.R.A.1917D, 10; Mountain Timber Co. v. State of Washington, 243 U.S. 219, 37 S.Ct. 260, 61 L.Ed. 685; Evanhoff v. State Industrial Accident Commission, 78 Or. 503, 154 P. 106; Hunter v. Colfax Consol. Coal Co., 175 Iowa 245, 154 N.W. 1037, 157 N.W. 145, L.R.A. 1917D, 15; Utah Fuel Co. v. Industrial Commission, 57 Utah 246, 194 P. 122; Alabam's Freight Co. v. Hunt, 29 Ariz. 419, 242 P. 658.

In Greenarch v. Industrial Commission, supra, the action was against the state. In Walters v. Blackledge, supra, the decision was based on the right of review of both law and facts. As we view the case of Arneson v. Robinson, supra, it does not relate to matters involved here. In Ontario Mining Co. v. Industrial Commission, supra, delegation of judicial power was sustained on the ground that the legislature was authorized to create inferior courts with state-wide jurisdiction. Grant Coal Mining Co. v. Coleman, supra, points up the fact that an award without a judgment would be ineffective. The cases of Borgnis v. Falk Co.; State of Washington v. Mountain Timber Co.; Evanhoff v. State Industrial Accident Commission; Hunter v. Colfax Consol. Coal Co.; Utah Fuel Co. v. Industrial Commission; and Alabam's Freight Co. v. Hunt, all supra, are cases involving the recovery from state insurance funds, or the acts are elective. Certainly, if the parties so elect, they are bound thereby. It is just as certain that the state, in the exercise of its police power, may consent to be sued and provide the exclusive machinery therefor. Thus it is seen the acts reviewed are all unlike the 1957 Act, ours is compulsory and deals with individual rights. Other cases relied on are as readily distinguishable.

We repeat, the right to determine controversies between individual litigants stems from Section 1, Article 6 of New Mexico Constitution. This power rests alone with the courts. No case has been cited, and our search fails to disclose one

having constitutional provisions comparable with Section 1, Article 6, which supports relators' position. Possibly Maryland is the one exception, but there the commission cannot issue an enforceable judgment; the judgment must be that of the court to give it effect.

Relators say further that since the Workmen's Compensation Act was unknown to the common law, rights and liabilities provided thereby may be determined finally by a commission. True, the Workmen's Compensation Act is a creature of the statute, but we wonder just how far would relators have us go in this regard. There were numerous territorial statutes, too numerous to mention, in effect at the time of the adoption of our constitution, which created rights and liabilities unknown to the common law. Would relators say that all such rights and liabilities might be determined by a commission?

There is one further matter. Section 94 of the Act under attack expressly repealed Workmen's Compensation laws existing prior to the 1957 Act and it would appear that the conclusion reached leaves the state without a Workmen's Compensation law, but this is not so. Plainly, Section 94 intended to clear the way for the operation of the new Act, and since the new Act is found unconstitutional, the repealing clause falls with the act containing it. State v. Prince, 52 N.M. 15, 189 P.2d 993,

996. We said in that case, "an unconstitutional law being void is not inconsistent with any former law", citing cases.

We wish to make the observation that within the last decade we have had a progressively increasing number of Workmen's Compensation cases reaching the district courts and this court. We have seen the number of district judges in the state grow from 9 to 19. Much of the added work justifying this increase is due to the increasingly large load of compensation cases. Undoubtedly the legislature had in mind to give the courts relief, by the questioned Act. Suffices to say, that the work load on the courts has likewise increased similarly in other fields of litigation, and to sustain the Act as a matter of expediency, would justify the creation of boards and agencies to take over the entire field of the judicial department of our state government.

The validity of the Act is challenged on other grounds but since these raise constitutional questions, we will refrain from deciding them until a proper case is presented.

The alternative writ heretofore issued should be discharged and it is so ordered.

KIKER, J., and HENSLEY, Jr., D. J., concur.

SADLER, J., and ARMIJO, D. J., dissent.

LUJAN, C. J., and McGHEE, J., not participating.

SADLER, Justice (dissenting).

New Mexico stands alone in the hierarchy of states holding the legislature lacks power to create an industrial commission to hear and screen for final determination by the courts the myriad cases, increasing at an alarming rate, annually, under its workmen's compensation act.

It is easy enough to brush off this overwhelming weight of authority by fancied distinction in the facts of supporting cases, ignoring the fundamental conclusion announced by them that there is no unlawful delegation of judicial power; or, by asserted differences in the separation of powers clause in our Constitution, Art. 3, § 1, and its counterpart found in the constitutions of other states, when a comparison of ours and theirs affords indisputable proof all have substantially the same proviso, expressed in comparable or almost identical language.

Speaking on the subject in question, the author of the text in 58 Am.Jur. 592, § 25, "Workmen's Compensation," said:

"Provisions of workmen's compensation acts authorizing the determination of controversies thereunder by administrative authorities have generally been sustained as against the objection that such a provision constitutes an unconstitutional delegation of judicial power, and also as against the objection that it is violative of a prohibition against the establishment of courts not provided for in the Constitution. It is within the legislative competency, in the absence of any constitutional restriction, to invest an administrative board or officer with power to determine questions of fact in proceedings under such acts. * * *"

Representative cases holding there is no unlawful delegation of judicial power, under constitutional provisions similar, and in some cases, practically identical with ours, may be cited as follows: Borgnis v. Falk Company, 147 Wis. 327, 133 N.W. 209, 37 L.R.A.,N.S., 489; Hunter v. Colfax Consol. Coal Co., 175 Iowa 245, 154 N.W. 1037, 1060–1065, 157 N.W. 145, L.R.A.1917 D, 15; Cunningham v. Northwestern Imp. Co., 44 Mont. 180, 119 P. 554; State of Washington v. Mountain Timber Co., 75 Wash. 581, 135 P. 645, L.R.A.1917D, 10, affirmed 243 U.S. 219, 37 S.Ct. 260, 61 L.Ed. 685; Evanhoff v. State Industrial Accident Commission, 78 Or. 503, 154 P. 106; Industrial Commission of Utah v. Evans, 52 Utah 394, 174 P. 825; Utah Fuel Co. v. Industrial Commission, 57 Utah 246, 194 P. 122; Alabam's Freight Co. v. Hunt, 29 Ariz. 419, 242 P. 658; Walters v. Blackledge, 220 Miss. 485, 71 So.2d 433; Grant Coal Mining Co. v. Coleman, 204 Ind. 122, 179 N.E. 778, 782; Nega v. Chicago Rail-

way Co., 317 Ill. 482, 148 N.E. 250, 39 A.L.R. 1057, and Annotation in 39 A.L.R. 1057.

In Grant Coal Mining Co. v. Coleman, supra, the supreme court of Indiana, touching the question at issue, said:

"While recognizing that the Workmen's Compensation Act represents a radical departure from the traditional procedure followed in our courts—combining, as it does, in one proceeding and one case the fact finding function of the Industrial Board and the judgment rendering power of a court, we do not believe that there is any violation of the Indiana Constitution as respects the separation of powers, or any violation of the due process provisions of either the state or United States Constitutions."

Counsel for respondent seem to deplore the use of the word "quasi-judicial" in the field of administrative law. They argue that, since the phrase "judicial power" can be defined in the abstract, in the field of delegated powers in administrative law the use of the term "quasi-judicial" should be abandoned. Unfortunately, for this observation, however, the term is not to be abandoned or ignored. Note this language from the able pen of the late and distinguished Chief Justice Vanderbilt of New Jersey in Mulhearn v. Federal Shipbuilding & Dry Dock Co., 2 N.J. 356, 66 A.2d 726, 730, to-wit:

"The failure to comprehend that administrative adjudication is not judicial springs from the erroneous notion that all adjudication is judicial. This is not so and never has been so. * * Once the obvious right of the Governor and the Legislature, each to adjudicate within his or its own proper sphere, is recognized and it is conceded that the courts are not the exclusive instrumentalities for adjudication, the true nature of the administrative adjudications, commonly termed 'quasi-judicial', becomes apparent. This term serves to characterize not the quality of the adjudication but its origin outside the judicial branch of the government."

This court has been as free as others to characterize the action of an administrative agency in its fact finding capacity as "quasi-judicial," not so much as pausing to suggest that its exercise transcended the separation of powers clause in our state constitution. See a case decided soon after statehood, City of Socorro v. Cook, 24 N.M. 202, 173 P. 682, 684. The court was dealing with the city council of Socorro acting as an administrative agency under a territorial act known as Chapter 77, Laws 1893, to receive applications from various claimants of deeds to land in a Grant one Spanish league distant from the center of the Roman Catholic Church of the City of Socorro and to investigate and

issue deeds to persons shown to be entitled thereto. Among other things, the court, speaking through the late Mr. Justice Roberts, said:

"By this act the legislature conferred upon the city council of Socorro certain quasi judicial powers. * * * The legislature having conferred upon the city council the authority to determine whether the original applicant to the lands involved in this litigation was entitled to a deed to the same, and said authority having determined said matter adversely to the city, the question of the applicant's title as against the city is res adjudicata, and is not open to collateral attack. The courts have uniformly held that the decisions rendered by an officer or a board legally constituted and empowered to settle the questions submitted to it, when acting judicially, have the force and effect of a judgment. (Citations omitted.) * * *" (Emphasis supplied.)

It was in the sense here employed that the act in question provides awards by the commission shall have the effect of a judgment. So they do, if not set aside on the statutory review provided by the act.

In my opinion, it is unnecessary to leave the decisions of this court to decide the first question posed by the respondent. City of Socorro v. Cook, supra; Lorenzino v. James, 18 N.M. 240, 135 P. 1172; State ex rel. Perea v. Board of County Comm., 25 N.M. 338, 182 P. 865; State v. Kelly, 27 N.M. 412, 202 P. 524, 21 A.L.R. 156; In re Gibson, 35 N.M. 550, 4 P.2d 643; Chiordi v. Jernigan, 46 N.M. 396, 129 P.2d 640; State ex rel. Bliss v. Dority, 55 N.M. 12, 225 P.2d 1007; McCormick v. Board of Education, 58 N.M. 648, 274 P.2d 299; State ex rel. Dickson v. Saiz, 62 N.M. 227, 308 P.2d 205.

Our first section on the Judicial Department, Art. 6, § 1, provides:

"The judicial power of the state shall be vested in the senate when sitting as a court of impeachment, a Supreme Court, district courts, probate courts, justices of the peace, and such courts inferior to the district courts as may be established by law from time to time in any county or municipality of the state, including juvenile courts."

The board created by the legislature and involved in the case of City of Socorro v. Cook, supra, was not a court; the legislature did not so comprehend it, nor was it created as such. Yet, just as in the case of the commission created by the challenged act before us, L.1957, c. 246, it was invested with certain quasi-judicial powers, the exercise of which might result in a decision having the effect of a judgment. Did this fact render the territorial act bad when measured by the yardstick of the present separation of powers

provision in our State Constitution? It did not. And, somewhat later, after the adoption of our State Constitution, this court in State v. Kelly, supra, summarized its holding, as follows:

"Code 1915, c. 91, which makes the Attorney General, the state auditor, and the state treasurer a 'board of loan commissioners, of the state of New Mexico,' and invests such board with power to ascertain and determine the debts and liabilities of the territory of New Mexico and the debts of the counties thereof which were valid and subsisting on January 20, 1910, and which were assumed by the state of New Mexico under the Constitution, and providing for the payment or refunding of such indebtedness by the issue and sale of bonds or otherwise by such board, *does not confer judicial power upon such board in a constitutional sense, and such board does not constitute a court, and a finding or judgment by such board under such statute is not a judicial judgment or decree.*" (Emphasis supplied.)

The decision in the Kelly case is right in line with the holding in City of Socorro v. Cook, supra, *and in lending our approval in the Kelly case to Cunningham v. Northwestern Improvement Co., supra, to a workmen's compensation plan in Montana very similar to the one here proposed, we* *all but decided the very case now before us in so far as the attack made upon the act is that there is an unwarranted delegation of judicial power.*

Both before and since those decisions, the legislature in innumerable cases has created administrative boards, commissions and agencies to administer our many sided economic and industrial problems. We have so many such agencies, most of which must be and are authorized to exercise quasi-judicial powers that it would serve no purpose to attempt to list them. They serve a useful purpose in regulating the activities of a particular occupation or industry and save the courts the time and labor of attempting to take over management and regulation of such businesses and industries. We have the Barbers Board, the Bar Commissioners, the Medical Board, the Real Estate Board and so on ad infinitum.

However much we may disagree with the trend toward the creation and existence of such boards, as a matter of policy, whatever our predilections against them may be, that administrative law is now firmly entrenched in our jurisprudence can not be gainsaid. And so it is we now see this effort on the part of the legislature to create a commission to handle the myriad cases arising under the workmen's compensation law and relieve the courts of the progressively increasing load imposed on

them in hearing and deciding them in the first instance.

An adverse decision by us on the validity of the present act, not only will overrule *sub silentio* the many cases in which we have upheld legislative acts creating such administrative boards but at the same time will forever foreclose, without a constitutional amendment, any effort to relieve the growing congestion in the courts as a result of hearing and deciding workmen's compensation cases. The mere circumstance that findings of fact are made binding and conclusive unless supported by substantial evidence is no different from the rule provided for in the judicial review of decisions of all these administrative boards. Their orders are not to be overturned unless "unreasonable, unlawful, or *without substantial support in the evidence*," or equivalent language. See Chiordi v. Jernigan, supra; Harris v. State Corporation Commission, 46 N.M. 352, 129 P.2d 323; Hatfield v. New Mexico State Board of Registration, 60 N.M. 242, 290 P.2d 1077; McCormick v. State Board of Education, supra.

Although by no means intimating that counsel for respondent and amici curiae aligning themselves with him in assailing validity of the act have put all their reliance on two cases to be presently mentioned, it seems obvious to us they give greater weight to the California case of Laisne v. State Board of Optometry, 19 Cal.2d 821, 123 P.2d 457, and the New Hampshire case of In re Opinion of Justices, 87 N.H. 492, 179 A. 344, 110 A.L.R. 819, than to any others. The Laisne case is out of line with the great weight of authority in the field of administrative law. It is not even a workmen's compensation case.

Furthermore, it was decided by a divided court, the vigorous dissenting opinion of Chief Justice Gibson having been concurred in by two other justices. It represents decidedly the better reason and logic and is fortified by far the greater support in the authorities. In so far as either the Laisne case or the New Hampshire case (which like the Laisne case is not a workmen's compensation case) is in conflict with the views herein expressed, we should decline to follow either. There is in the challenged act no unlawful delegation of judicial power and it is valid against said challenge.

The majority opinion represents an unwarranted invasion by this court of a matter of policy peculiarly within the legislative domain. For the past several years workmen's compensation cases have proved the most prolific source of litigation reaching the courts. At statehood eight district judges and three supreme court justices were able to care for the normal litigation in the state. Since then two justices have been added to the supreme court

and the number of district judges has been increased from 8 to 19, representing an increase of more than one hundred per cent. Workmen's compensation claims have shown an increase out of all proportion to other types of litigation and are more largely responsible for the increase in the number of judges than any other class of cases.

The legislature sensing this condition, in its wisdom, has sought to alleviate it by the questioned act, setting up an industrial commission to hear and screen for the courts this growing burden on their time and labor. If today's opinion stands, it will be only a few years until we have a complete bottleneck in this court from the growing number of appeals in workmen's compensation cases. The effect of this decision compelling the district courts of the state to continue performing the work of an industrial commission can easily so result. Future efforts to remedy the situation may not be viewed sympathetically by the legislature when its members recall the fate of this earlier effort so to do. Indeed, future importunities for legislative aid to break an inevitable log jam of appeals in this court understandably may meet with the same reception accorded the traditional "voice in the wilderness."

The majority are content to nullify completely the legislative action in adopting this statute. Having done so, they see no purpose, nor do we, in passing upon the Governor's exercise of the partial veto except to say their failure to discuss same supports an implication they see in his action in this behalf nothing fatal to the validity of the act as a whole. Our holding in State ex rel. Dickson v. Saiz, supra, touching the Liquor Control Statute would rather discourage a declaration of invalidity on this ground since, to the extent an act of partial veto exceeds constitutional bounds, it would leave the law existing as if no attempt to exercise the right had ever taken place. Compare, State ex rel. Jamison v. Forsyth, 21 Wyo. 359, 133 P. 521; Fergus v. Russell, supra. We see no respect in which the exercise of the partial veto shown would not leave enough of the act intact to avoid a complete nullification of the statute.

It is difficult to comprehend how the majority, mindful of the presumption of validity attending our appraisal of this enactment, in the face of our holding in the array of prior decisions such as City of Socorro v. Cook, supra; State v. Kelly, supra (where we expressly approved the Montana case of Cunningham v. Northwestern Improvement Co., supra, upholding a workmen's compensation plan like unto ours); Chiordi v. Jernigan, supra; Harris v. State Corporation Commission, McCormick v. State Board of Education, both supra, and the vast number of cases

from other jurisdictions repudiating the claim such an act constitutes an unconstitutional delegation of judicial power, can justify the declaration they make today in invalidating this act.

Certainly, in doing so, the majority ignore what we said, recently, in State ex rel. Dickson v. Saiz, supra [62 N.M. 227, 308 P.2d 209], to-wit:

"Furthermore, in the attack made upon the bill or statute in this Court we are confronted at the very outset with a presumption of the validity of the act. Indeed, it has been many times held in this Court that it should be well satisfied of the invalidity of an act upon constitutional grounds before striking it down; that if two constructions each equally reasonable should exist, the one sustaining the validity of the act is to be preferred. Fowler v. Corlett, 56 N.M. 430, 244 P.2d 1122. Some courts, even the highest court of the land, go so far as to suggest an appellate court should be satisfied beyond a reasonable doubt of an act's invalidity on constitutional grounds before declaring it so. State ex rel. Hannah v. Armijo, 38 N.M. 73, 28 P.2d 511; State ex rel. New Mexico Dry Cleaning Board v. Cauthen, 48 N.M. 436, 152 P.2d 255; State v. Shroyer, 49 N.M. 196, 160 P.2d 444."

Today's decision turns back the clock for fifty years in the long struggle for a place in our jurisprudence of administrative law. That place has been so firmly established that, until now and for many years, last past. none has been bold enough to renew the war on its existence. Truly, today's decision sounds an anachronistic note in the legal bibliography of administrative law. Neither the legislature has exceeded its constitutional power nor has the Governor in any material respect by an exercise of the partial veto crossed a constitutional barrier. An abiding conviction tells me this court, the head of the judicial department, rather than the legislative or the executive department, mistakenly, to be sure, but through erroneous interpretation, nevertheless, has crossed the barrier this time. Yet, after all, some tribunal must have the final say and, as a distinguished jurist once said:

"We are under a Constitution, but the constitution is what the judges say it is."

We would not have it otherwise.

It follows from what has been said that the majority opinion fails to meet with my approval. For the reasons given,

I dissent.

ARMIJO, D. J., concurs.