129 P.2d 323

HARRIS v. STATE CORPORATION COM-
MISSION et al. (DALBY MOTOR
FREIGHT LINES, Inc.,
Intervenor).

No. 4661.

Supreme Court of New Mexico.

Sept. 19, 1942.

L. C. White, of Santa Fe, and Levens & Benson, of Lubbock, Tex., for appellant Dalby Motor Freight Lines.

Geo. H. Hunker, Jr., Asst. Atty. Gen., for appellant Corporation Commission.

M. W. Hamilton, of Santa Fe, for appellee.

BICKLEY, Justice.

Intervenor, a common motor carrier, operating an interstate freight line from

Amarillo, Texas, to Denver, Colorado, made application to the State Corporation Commission, referred to as the Commission, for a certificate of public convenience and necessity to transport freight along its route on U. S. Highway 87, between Raton and Clayton, to serve intermediate points located on that highway, with the exception of Meloche, Grande and Royce.

Pursuant to said application, and after due notice was given, a hearing was had thereon before the Commission.

Intervenor (applicant) introduced evidence by the testimony of numerous witnesses evidencing the need for the service to be supplied by applicant and for the granting of the certificate.

The appellee, Joe A. Harris, also operating a common motor carrier interstate freight line between Denver and Clayton under a certificate of convenience and necessity, was present at said hearing, protesting the granting of a certificate to the applicant, Intervenor, and offered the evidence of Mr. Harris, but offered no testimony by the shipping public.

The Commission from the evidence found that the applicant proposed to provide daily service at points along the line, the protestants only serving three and four times a week, and reported that "the applicant used ten witnesses to substantiate their plea to the Commission for this service, and in each instance each witness testified that this service was needed in their business, and, on the other hand, the protestant used no witnesses other than the testimony of Mr. Harris himself. The witnesses testified that they had been deprived of business through lack of service, and with the issuance of this certificate to the applicant that it would not only be a convenience and necessity to them but to the entire community along this route.

"We find that public convenience and necessity require the operation by applicant as a common carrier to transport commodities in general between Raton and Clayton and intermediate points except Meloche, Grande and Royce, via U. S. Highway 87."

These findings are in substantial observance of the provisions of the controlling statute, Ch. 154, L.1933, Sec. 8 of which says:

"If the commission finds from the evidence that the public convenience and necessity require the proposed service or any part thereof it may issue the certificate as prayed for, or issue it for the partial exercise only of the privilege sought and may attach to the exercise of the right granted by such certificate such terms and conditions as in its judgment the public convenience and necessity may require; otherwise such certificate shall be denied. Before granting a certificate to a common motor carrier, the commission shall take into consideration existing transportation facilities in the territory for which a certificate is sought, and in case it finds from the evidence that the service furnished by existing transportation facilities is reason-

ably adequate, the commission shall not grant such certificate."

█ So we hold that the findings support the order of issuance of the certificate.

Thereafter the protestant Harris filed a complaint in the District Court, wherein, among other averments, it is alleged that the action of the Commission in granting said certificate was "Unreasonable, discriminatory, unjust and unlawful" in * * * "permitting another truck line to operate over said route" for the reason that it would "destroy the business of the plaintiff" and would "So reduce the income therefrom as to make it impossible for the plaintiff * * * to profitably continue his transportation business operations over said route". And further that the order granting the certificate was, "unreasonable, discriminatory, unjust and unlawful in that the injury resulting to the plaintiff" would result in injury and detriment to the public by reason of the impossibility of the plaintiff to profitably continue operations; and prayed an injunction against the Commission to restrain it from permitting the operation under the certificate issued to the Applicant-Intervenor.

Issue was joined by answers on behalf of the Intervenor and the Commission.

The portion of the act cited, which authorizes the foregoing procedure is as follows:

"Sec. 51. (Action to Set Aside Orders of Commission.) (a) Any motor carrier and any other person in interest being dissatisfied with any order or determination of the Commission, not removable to the Supreme Court of the State of New Mexico under the provisions of Section 7, Article XI of the Constitution of the State of New Mexico, may commence an action in the District Court for Santa Fe County against the Commission as defendant, to vacate and set aside such order or determination, on the ground that it is unlawful, or unreasonable. In any such proceeding the court may grant relief by injunction, mandamus or other extraordinary remedy. In any such action the complaint shall be served with the summons.

"(b) The answer of the Commission to the complaint shall be served and filed within twenty days after service of the complaint, whereupon said action shall be at issue without further pleading and stand ready for trial upon ten days' notice.

"(c) Any person not a party to the action, but having an interest in the subject thereof, may be made a party.

"(d) All such actions shall have precedence over any civil cause of a different nature, and the District Court shall always be deemed open for the trial thereof, and the same shall be tried and determined as other civil actions without a jury."

At the trial, the plaintiff Harris, instead of introducing the record of the hearing before the Commission, introduced over objection, the testimony of seven witnesses.

The intervenor offered in evidence a certified copy of the order of the Commission

and the proceedings before the Commission pursuant to which the order and Certificate were issued.

The court, upon the conclusion of the evidence, made its findings of fact which were contrary to those made by the Commission, upon the essentials set forth in Section 8 of the act quoted supra, namely, in brief, that the old service was sufficient and that there was no need for the proposed new and additional service.

The Court concluded as a matter of law that the action of the Commission in granting the certificate to intervenor-appellant was unlawful and unreasonable. From the judgment based upon these findings and conclusion the Commission and intervenor appeal.

The first question is as to the scope of the judicial review provided for by § 51, Ch. 154, L.1933.

Our constitutions, both federal and state, divide the powers of government into three classes—the legislative, the executive, and the judicial. Our Constitution in Article 3 expressly provides that "no person or collection of persons charged with the exercise of powers properly belonging to one of these departments, shall exercise any powers properly belonging to either of the others, except as in this constitution otherwise expressly directed or permitted." We do not find any exceptions that would pertain to the instant case. We early took note of these constitutional principles, shortly after the adoption of the constitution, in a thorough exposition of the purposes, intents and bounds of the provisions of sections 7 and 8 of Article XI, which delineate the powers of the Corporation Commission over carriers—Duties of the Supreme Court—and dealing with hearings before the Corporation Commission in an able and exhaustive opinion by Mr. Chief Justice Roberts, in Seward v. Denver & R. G. R. Co., 17 N.M. 557, 131 P. 980, 46 L.R.A.,N.S., 242.

Later, in Seaberg v. Raton Public Service Co., 36 N.M. 59, 8 P.2d 100, 101, we frequently drew upon the Seward case and said:

"The proceeding of removal [of a cause from the commission to the Supreme Court] is not for the review of judicial action by the commission. It is to test the reasonableness and lawfulness of its orders. The function of the commission is legislative; that of the court, judicial. The commission is not given power to enforce any order; it being merely a rate-making or rule-making body, doing what, if there were no commission, the Legislature alone could do. The court, on the other hand, can make no rate or rule, since it lacks the legislative power. * * *

"If this court is to review the commission's rule making or rate making, except as to the lawfulness or reasonableness of the rules or rates imposed, we ourselves assume legislative powers which, as held in the Seward case, it was not the intention to confer. * * *

"Granted the force of the provision invoked as pointing to a different scheme of

regulation, granted that, if invoked in the Seward case, it might have turned the scales, it can have no such weight now. Even if we were inclined, as we are not, to question the correctness and wisdom of the original interpretation, holding us in the judicial path, and out of the legislative, every consideration of policy would urge against it."

Since the Seward case was decided, administrative tribunals have increased by leaps and bounds, and a vast amount has been written about them and the scope of judicial review of their decisions. As a few examples, see Federal Administrative Law, by Vom Baur, 1942: "Administrative Law—Scope of Judicial Review" Michigan Law Review, Vol. 39 (1940–41) p. 438; Administrative Adjudication and Judicial Review, Illinois Law Review (1939–40) Vol. 34, p. 680; The Scope of Judicial Review of Administrative Action, Rocky Mountain Law Review (1939–40) Vol. 12, p. 173; A series of essays on the subject: "To What Extent Should the Decisions of Administrative Bodies be Reviewable by the Courts" appearing in Vol. 25 (1939) of the American Bar Association Journal at pages 770, 838, 940 and 1018; and "Court Review of Administrative Decisions", California Law Review, vol. 30, p. 507 (July 1942.)

There are many other articles dealing with the subject. The American Bar Association's Administrative Law Bill, which is the result of years of study, undertakes to state a review formula to be used by the reviewing Court and is quoted in Illinois Law Review, Vol. 34, p. 690, as follows:

"Any decision of any agency or independent agency shall be set aside if it is made to appear to the satisfaction of the Court (1) that the findings of fact are clearly erroneous; or (2) that the findings of fact are not supported by substantial evidence; or (3) that the decision is not supported by the findings of fact; or (4) that the decision was issued without due notice and a reasonable opportunity having been afforded the aggrieved party for a full and fair hearing; or (5) that the decision is beyond the jurisdiction of the agency or independent agency as the case may be; or (6) that the decision infringes the Constitution or Statutes of the United States; or (7) that the decision is otherwise contrary to law."

While this formula may not be perfect, it is in the main supported by our decisions in the Seward Case and the Seaberg Case in so far as the respective functions of the Commission and the Supreme Court on removal of causes therefrom, is concerned.

It is of value to recall that Mr. Ralph M. Hoyt of the Wisconsin Bar, in an address at the North Carolina Bar Meeting in 1937, related his participation in the bill above referred to, saying:

"Our Committee, after thorough consideration, prepared and presented to the Kansas City convention of the association last month a bill based on the theory that the administrative process has become a ne-

cessary and permanent part of the machinery of government; that the courts cannot be expected to do administrative work; that the findings and determinations of administrative officers are entitled to weight and standing, but should not be beyond control; and that the most feasible method of providing for review in the federal field is to take the testimony and exhibits as produced before the department or board as the final record in the case, and submit that record to the scrutiny of a constitutional court for errors of law and flagrant errors of fact. We rejected both the idea of review on questions of law alone, and of a complete retrial of the facts, but instead provided in our bill that the administrative findings of fact should stand unless unsupported by evidence or unless arbitrary or capricious." See North Carolina Law Rev. 16; at p. 7.

We indulge one more expression of the essayist. In the California Law Review article, supra, a distinguished law writer says:

"The problem is one of properly dividing the burden of law enforcement between the judicial and the administrative organs of government. What should be the share of the courts, what the share of the administrative agencies? Normally the role of the courts should be one of supervision and control to prevent abuses, not substitution of the court for the agency, not a performance by the court of the agency's function. The most ardent admirer of so-called administrative justice concedes that there should be court review to set aside administrative decisions for error of law, including failure to follow the procedure prescribed by law, and to set aside decisions based upon arbitrary findings of the facts. Indeed there is no controversy except about the determination of issues of fact. What degree of finality shall the administrative findings be given? The general rule with respect to nearly all federal administrative agencies and those of other states is that their findings of fact are final if there is substantial evidence to support them. With respect to the issues of fact the reviewing court examines the evidence taken by the administrative agency, not to reweigh it, not to substitute the court's judgment for that of the agency, but to determine whether the agency acted rationally, that is, to see that it did not arrive at its conclusion arbitrarily. A New York state commission after three years study reports that the substantial evidence test has long been and is the invariable rule in that state. The report states that 'The substantial evidence rule * * * is broad enough, and is capable of sufficient flexibility in its application, to enable the reviewing court to correct whatever ascertainable abuses may arise in administrative adjudication' that it ' * * * affords a sufficient safeguard to individual interests without unduly impeding administration.' It leaves the agency with ' * * * a reasonable degree of responsibility * * *' while enabling the court to correct abuses."

When our Legislature enacted Ch. 154, L. 1933, it declared its purpose and policy to confer upon the Commission the power and authority to make it its duty to supervise and regulate the transportation of persons and property by motor vehicle for hire upon the public highways of this state and to relieve the undue burdens on the highways, and to protect the safety, and welfare of the travelling and shipping public and to preserve, foster and regulate transportation and permit the co-ordination of transportation facilities.

Manifestly, this is a legislative and/or administrative, and not a function of the judiciary.

This purpose and policy is not unlike the purpose and policy declared in §§ 7 and 8 of Art. XI of our Constitution. Pioneer work had been done by the Constitution makers and by our court in the Seward, the Seaberg and other cases, and it is interesting to note that when the draftsmen of the act said in § 51, that an action could be commenced in the District Court to set aside an order of the Commission "on the ground that it is unlawful, or unreasonable" they employed the identical phrase employed in the Seward case to describe the limits of the scope of judicial review by the Supreme Court of orders of the Commission on removal.

Also, it is interesting to note that § 51 recognizes that some orders of the Commission made pursuant to the powers vested by the 1933 Act are removable to the Supreme Court under the provisions of § 7 of Art. XI of the Constitution.

It is only orders not so removable which may be the basis of an action in the District Court under the provision of Sec. 51 of the statute.

It would be unfortunate and confusing if there prevailed one standard of the scope of judicial review in cases removable to the Supreme Court under the provisions of § 7 of Art. XI of the Constitution, and a different standard in cases removable to the District Court under the procedure provided in § 51 of the act, and § 53 which gives an appeal to the Supreme Court from the District Court. There is nothing in the act which indicates an intent to accomplish such an incongruous situation.

Counsel for Appellee contends that in the removal of a cause pending before the Commission under § 51, etc., of the Act, the trial before the District Court is a trial de novo. This view is repelled distinctly by what we said in the Seward Case.

Furthermore, section 27 of Art. VI of the Constitution says that on appeals from Probate Courts and Justices of the Peace "trial shall be had de novo unless otherwise provided by law". As above stated, it appears that the act was prepared with the Constitution and the Seward case in mind, and it seems likely that if a trial de novo had been intended, appropriate language would have been employed to indicate such intention.

Even where statutes of other states have said that upon judicial review of administrative or legislative acts the trial shall be de novo, some courts have held such provision unconstitutional, others hold that the de novo provision is limited to the ascertainment by the court of whether the jurisdictional facts exist and whether there had been due process, and whether the Commission had kept within its lawful authority.

That questions of constitutional right and power raised by administrative action must be tried de novo so that the court may reach its own independent judgment on the facts and the law without being bound by the rule of administrative finality of the facts and that additional evidence may be introduced so that these questions of constitutional right and power need not be decided on the administrative record alone, may be conceded.

By the Seward case, newly discovered evidence may be also referred to the Commission for consideration upon remand of the cause, in connection with evidence previously reviewed.

No such questions of constitutional right and power or newly discovered evidence are involved in the case at bar.

For a discussion of these principles, see Vom Baur, Federal Administrative Law (1942) and particularly the chapter on Right to Trial De Novo. See, also, Shupee v. Railroad Commission, 123 Tex. 521, 73 S.W.2d 505, and Railroad Commission v. Shupee, Tex.Civ.App., 57 S.W.2d 295.

Under § 51 of the Act, the District Court may award relief to the plaintiff and vacate and set aside an order of the Commission on the ground that it is unlawful or unreasonable.

■ We think "unreasonable" as here employed means "capricious" "Arbitrary" or "confiscatory". See Public Service Comm. v. Havemeyer, 1936, 296 U.S. 506–520, 56 S.Ct. 360, 80 L.Ed. 357. See, also, Southern Kansas State Lines Co. v. Public Service Commission, 135 Kan. 657, 11 P.2d 985, 987, holding that "unreasonable" is defined as conveying same idea as irrational, foolish, unwise, silly, preposterous, senseless, stupid, etc.

■ We hold that the District Court erred in receiving and considering testimony other than that which had been produced at the hearing before the Commission.

■ It is also contended by appellee, that since the burden of proof at the hearing before the Commission was upon the applicant for the certificate of Public Convenience and necessity, the evidence submitted before the Commission is insufficient. Assuming that appellee is correct in so placing the burden of proof at the original hearing, we assume also that the burden was upon the appellee in the trial in the District Court to sustain his allegations that the order of the Commission granting said certificate was unlawful and unreasonable.

The principal allegation of appellee's complaint as a basis for the averment that

the order is unlawful and unreasonable is that appellant by operating over the route in question would destroy appellee's business and would result in loss of profits to appellee with resulting injury to the public.

In the first place, there is no substantial evidence in the record of the Commissioner that such result would follow the issuance and exercise of such certificate.

■ Furthermore, if true, it would be only a circumstance to be considered in connection with other evidence in arriving at a determination by the Commission.

In Inland Motor Freight v. United States, D.C., 36 F.Supp. 885, it was held that: "The circumstances that there are three truck lines and a railway operating between points involved and that operation of a third common carrier by motor vehicle to a certain extent decreases tonnage and revenues of other carriers will not in themselves defeat finding of Interstate Commerce Commission of 'public convenience and necessity' as basis for grant of application for certificate. Motor Carrier Act of 1935, 49 U.S.C.A. § 301 et seq." See also to the same effect, Seward v. Denver & R. G. R. Co., supra.

■ From a careful consideration of the record, we are unable to say that the order and determination of the Commission are unlawful and unreasonable.

It follows that the judgment must be reversed, and it is so ordered.

BRICE, C. J., SADLER, and MABRY, JJ., concur.

ZINN, J., not participating.