300 P.2d 948

**TRANSCONTINENTAL BUS SYSTEM, Inc.,
Plaintiff-Appellant,**

v.

**STATE CORPORATION COMMISSION,
James F. Lamb, John Block and Ingram
B. Pickett, Members of said Commission,
and Geronimo Lines, Inc., Defendants-Appellees.**

**No. 5920.**

Supreme Court of New Mexico.

Aug. 13, 1956.

Motion for Leave to File Second Petition for Rehearing Denied Sept. 17, 1956.

Manuel A. Sanchez, Santa Fe, for appellant.

Richard H. Robinson, Atty. Gen., Jack A. Smith, Asst. Atty. Gen., Jethro S. Vaught, Jr., Albuquerque, for appellees.

PER CURIAM.

Upon consideration of the motion for rehearing the former opinion is withdrawn and the following is substituted.

McGHEE, Justice.

This is an appeal brought by the Transcontinental Bus System, Inc. (hereinafter called Transcontinental) seeking the reversal of a judgment refusing to order the cancellation of a certificate of public convenience and necessity issued to Geronimo Lines, Inc. (hereinafter called Geronimo) for the operation of a passenger and express service in this state over Highway 85 between Albuquerque and Las Cruces, and between Albuquerque and Belen over Highway 87, except between Albuquerque and Isleta, and Truth or Consequences and Las Cruces.

Geronimo first secured a permit over the above mentioned highways in 1947 and the battle between it and Transcontinental has continued since said time. This is the third case to be brought before this Court in connection with the applications of Geronimo to operate such a line, the first being State ex rel. Transcontinental Bus Service, Inc., v. Carmody (Prohibition), 1949, 53 N.M. 367, 208 P.2d 1073; and the second, Transcontinental Bus System, Inc., v. State Corp. Commission, 1952, 56 N.M. 158, 241 P.2d 829.

In the latter case we directed that a permit granted to Geronimo be cancelled because of the failure of the commission to take into consideration the additional service then being furnished by another line. Immediately following the filing of that opinion, Geronimo petitioned the commission for a temporary certificate to operate on the same line; a hearing was held in due course and a permanent certificate of convenience and necessity was issued to Geronimo, which certificate Transcontinental now contends should have been cancelled.

We will disregard the claim of Transcontinental that Geronimo's petition for a temporary certificate could not be filed with the commission or entertained before mandate had issued from this Court and judgment entered thereon by the district court in the last cited appeal.

Our relevant statutes governing the issuance of such permits and the remedies afforded the parties are § 64–27–8, N.M.S.A., 1953, and following sections.

When Geronimo first entered the field, Transcontinental was operating practically six schedules each way per day between Albuquerque and Las . Cruces, and six

schedules each way per day between Albuquerque and Belen. In the year 1946 Transcontinental had net earnings over the lines of approximately $10,000.

Geronimo matched each run with an almost identical departure and arrival time at each station along the way. As a result, Transcontinental was compelled to reduce its runs between Albuquerque and Las Cruces to four each way per day; Geronimo promptly did likewise and continued its practice of having substantially identical departure and arrival times from its terminals as those maintained by Transcontinental. There was thus provided perfect duplication of service on the schedules operated, but there was an actual material decrease of service to the public. A reduction was also made in the service between Albuquerque and Belen to two schedules each way per day.

Records of passengers hauled over monthly periods during this time of competition were introduced by Transcontinental; they show a vast number of empty seats; that it was seldom any passengers had to stand, and then for very short distances.

During the period from 1947 to the date of the hearing in 1952, Transcontinental proved it had lost approximately $500,000 in the operation of its line between Albuquerque and El Paso, as compared with its profit of $10,000 in 1947. It also proved Geronimo was not making operating expenses, although Geronimo owned no busses

or stations and its tangible property consisted of office equipment of the approximate value of $500, a bank account of some $25,000 and a note of $17,000 signed by a person not identified but apparently presumed to be one of its officers. Geronimo was able to continue in business because of the tolerance of Pacific Greyhound Lines which was denied the right by the Interstate Commerce Commission to continue ownership of a large block of Geronimo stock, the commission saying such was not in the public interest and the Geronimo service was not needed for the handling of interstate traffic.

Geronimo used busses leased from Pacific Greyhound Lines on a mileage basis and at the time of the hearing it was falling badly behind in the mileage payments due Greyhound.

The substantial evidence in the record is that except for periods of time while the bus drivers of Transcontinental were on strike, good and sufficient service was being given by Transcontinental. It is not claimed the suspensions of service because of the strike justified the issuance of the permanent permit. It was during a strike that Geronimo got its second toe-hold which it has never turned loose. As stated above, since Geronimo entered the field, service to the public has actually been decreased.

In litigation between these same parties we said in 56 N.M. 158, 178, 241 P.2d 829, 842:

"In all jurisdictions it is recognized that the very purpose of enacting statutes regulating carriers is not only to promote convenience and satisfactory service for the public but to prevent ruinous competition which results in unsatisfactory public service. The statutes were not passed to foster competition but to regulate and control transportation facilities in the public interest and with consideration being given to the rights of existing carriers. Sec. 68–1301, N.M.S.A.1941 [§ 64–27–1, N.M.S.A., 1953] sets out that it shall be the purpose of the motor carrier act to 'carefully preserve, foster and regulate transportation and permit the coordination of transportation facilities.'

"Section 68–1306 of our statutes·(§§ 64–27–6, N.M.S.A., 1953) invests the Commission with power and authority and makes it its duty 'to regulate the facilities, accounts, service and safety of operation * * .* *so as to prevent unnecessary duplication of service between common motor carriers'*." (Emphasis supplied.)

As was stated in Canton-East Liverpool Coach Co. v. Public Utilities Comm., 1930, 123 Ohio St. 127, 174 N.E. 244, "necessity" for motor transportation is not synonymous with "convenience," but is a definite need of the general public for service where no reasonably adequate service exists. It is also stated in that case that reasonably adequate service only contemplates practical· service when measured by expense, volume of traffic and public needs.

Except for the testimony of one or two officials of the Greyhound system, almost all the evidence favoring the granting of a permit to Geronimo came from citizens along the line who rode the bus more or less frequently. Some preferred Geronimo because they thought its drivers were more courteous, some found its terminal more convenient and some favored its busses. Transcontinental produced practically the same number of witnesses who liked its line and services and balanced the testimony of like witnesses for Geronimo.

█ In these matters it is not the accommodation of a few individuals which controls. The convenience and necessity which the law requires to support the commission's order are the convenience and necessity of the public, as distinguished from that of a few individuals. Choate v. Illinois Commerce Commission, 1923, 309 Ill. 248, 141 N.E. 12; State Public Utilities Commission ex rel. Chicago Board of Trade v. Toledo, St. L. & W. R. Co., 1919, 286 Ill. 582, 122 N.E. 158. Our statute forbids the unnecessary duplication of service and that is unquestionably what we have here with Geronimo operating its line.

These lines run through sparsely settled communities and it is abundantly clear

there is not sufficient traffic to support the competing companies, even considering the interline passenger traffic which flows over the route. It is also clear that Geronimo, backed by Greyhound, has deliberately set out to capture a large part of the business that would naturally fall to Transcontinental by Geronimo's practice of operating on the same schedule, matching run for run.

In its motion for rehearing Geronimo says the majority did not give sufficient consideration to the unusually long record and the cases cited in the briefs. The record is unusually long, and likewise the briefs, but few cases since the writer has been a member of this Court have received the study this one has had here. We did not disregard the record or the cases cited.

Special complaint is made we did not consider our opinion in Harris v. State Corporation Commission, 46 N.M. 352, 129 P.2d 323, and have in effect overruled that case without mentioning it. We did consider it but the facts are so different in that case and the one at bar that it does not assist Geronimo in this case. There an inadequacy of service on the part of Harris was shown while the record here shows just the opposite. We have not overruled the Harris case.

The record in this case does not contain evidence justifying the action of the commission in granting the permit to Geronimo. On the other hand, it clearly shows the Geronimo operation is an unnecessary duplication of services and the trial court should have ruled as a matter of law that the commission's order granting unto Geronimo a certificate of public convenience and necessity to operate a service competing with that afforded by Transcontinental under the latter's certificate outstanding for several years was unlawful and unreasonable, and remanded the cause to the commission with instructions to cancel the permit so granted to Geronimo.

Decision on the above questions makes it unnecessary to decide other points raised by appellant.

The judgment will be reversed and the cause remanded to the district court with instructions to vacate its judgment and to enter another in accordance with the views herein expressed.

The motion for a rehearing is denied.

It is so ordered.

SADLER, J., and HENSLEY, D. J., concur.

KIKER, J., was of counsel below and did not participate.

LUJAN, Justice (dissenting).

The case is before us to review the judgment of the trial court on the combined record of proceedings before the Commission and before the Court. The trial court up-

374

held, and correctly so, the order of the State Corporation Commission directing that a certificate of public convenience and necessity be issued to Geronimo Lines, Inc., between Albuquerque and Las Cruces. From the entire record, which is voluminous, there is substantial evidence to sustain the order of the State Corporation Commission, and such order should be affirmed.

COMPTON, C. J., concurs.