**JOHNSON MACHINE WORKS, INC.,**
Appellee,

v.

**Dale PARKINS, Iowa State Labor Commissioner, Appellant.**

No. 53492.

Supreme Court of Iowa.

Sept. 16, 1969.

Richard C. Turner. Atty. Gen., and Joseph W. Zeller, Asst. Atty. Gen., for appellant.

Bailey C. Webber, Ottumwa, for appellee.

SNELL, Justice.

Iowa State Labor Commissioner appealed from the trial court's Findings of Fact and conclusions of law in a de novo hearing involving claimed violations of Iowa Employment Safety Laws.

The employer cross-appealed.

■ Our Employment Safety Laws are drawn to be so complied with and enforced as to provide the greatest reasonable safety to workmen. Some work is hazardous and absolute safety at all times is impossible. Cooperation between safety inspectors and employers is essential. In the case before us cooperation is conspicuous by its absence. In its place we have excessive officiousness met by recalcitrance. Safety is not enhanced by squabbles and combat. The result is prolonged litigation with minimal benefit to anyone.

Section 88A.15, Code of Iowa, suggests that the labor commissioner attempt voluntary compliance with suggestions before proceeding otherwise.

■ To provide against unreasonable exercise of administrative power the statute properly provides for de novo judicial review. Such review is limited to the evidence offered in court. It is not an outside investigation and is not authorized because of any judicial expertise in the field of safety engineering.

Johnson Machine Works, Inc. is plaintiff herein. The Iowa State Labor Commissioner is defendant and appellant.

Plaintiff operates a general machine shop business fabricating steel structures of various sizes, kinds and dimensions. The work is known as job work as contrasted with production work. Structural steel is fabricated as ordered. It is turned, shaped, punched, welded, rounded and polished as required. There are two plants. Plant #2 has two buildings with one being used partly for storage.

Section 88.11, Code of Iowa, provides that manufacturers shall keep a careful record of any accident to an employee while at work resulting in injury that may prevent him from returning to work within two days. Section 88.12 requires a report of such accidents to the commissioner of labor.

There are about 135 employees in the two plants. From March 31, 1964 to October 12, 1967 there were six accidents reported consisting of cuts (a thumb and a wrist requiring 5 stitches), burns, bruises and metal shavings in an eye resulting in 2½ days lost time. There was no evidence of any permanently disabling accidents and nothing to indicate that the accident rate was unusually high. What prompted the extremely zealous inspections does not appear.

On June 7, 1966 an inspector for the Bureau of Labor visited plaintiff's plants. Together with another inspector he rechecked the plants on July 18, 1966. Forty-eight violations of safety laws were formulated by the inspectors. Relationship between the inspectors and management was not cordial. Verbal abuse and some combat ensued.

Plaintiff corrected some of the claimed violations by installing guards and making changes as suggested.

On December 30, 1966 the plant was again inspected. The plant was not in operation at that time. Out of the normal complement only about 30 people were present. Sixteen violations were charged.

Plaintiff appealed to the Employment Safety Commission. Following hearing and visit to the plants the commission affirmed the commissioner as to items 1, 2, 4, 5, 6, 7, 9, 10, 11, 12, and 16. There was a partial affirmance as to item 14. Other charges were disaffirmed. The matters involved in the many items will be identified and considered, infra, and in sequence, as did the trial court.

Section 88A.16, Code of Iowa, provides for appeal from the action of the labor commissioner to the commission. The com-

mission is composed of 8 members, four representing employers and four representing employees (section 88A.3). The commission is required to affirm the commissioner unless by an affirmative vote of at least 5 members the action of the commissioner was found to be not reasonable or authorized. (section 88A.16). De novo judicial review may be had by commencing an action in district court within 30 days. Appeal to the supreme court may be taken as in other cases. Plaintiff within the time permitted commenced this action. The commissioner took no action and made no request for review of that part of the commission's rulings that were adverse.

I. Plaintiff's petition for judicial review was filed January 11, 1967. It asked for judicial review of the commission's findings as to items 1, 2, 4, 5, 6, 7, 9, 10, 11, and 16. It made no mention of item 14. It did not ask for review of the findings as to items 3, 8, 13, and 15 favorable to plaintiff. Defendant's answer was filed June 20, 1967. It admitted the factual allegations as to inspections, commission findings and procedure. It denied the action of the commissioner was unreasonable and asked that plaintiff's petition be dismissed.

During trial of the case amendments were filed with leave of court.

Plaintiff sought review of that part of item 14 not previously claimed as adverse.

Defendant sought review of the items wherein the commission disaffirmed the commissioner.

The trial court concluded that its jurisdiction was limited to the items within the scope of plaintiff's original appeal asking judicial review and that it was without jurisdiction to consider claimed violations numbered 3, 8, 13, 14 and 15 from which no timely appeal or request for review was taken or made.

■ We agree. It should be kept in mind that the request for judicial review was from the rulings of the commission adverse to plaintiff and identified by number. There was no timely request for judicial review of the preliminary findings of the commissioner.

■ If the review is treated as an original proceeding the issues are those tendered within the time permitted by statute. If the review is treated as an appeal the issues are those from which appeal is taken.

In the case at bar the evidence before the commission was not offered and is not a part of the record. The only evidence received and considered by the trial court and resultantly the only record before us is that made in the trial court. The written findings and dispositions by the commission were received as an exhibit but not the evidence upon which they were based.

In this connection we note that the commission "by unanimous vote" disaffirmed the commissioner as to items 3, 8, 13 and 15. Item 14 was affirmed in part and disaffirmed in part. No appeal was taken from this. Violation of item 9 was affirmed but the commission noted correction had been made before hearing.

Defendant appellant argues he was not required to appeal when the entire decision was on appeal. The entire decision was not an appeal. Plaintiff's petition specified the matters to be reviewed. If defendant wanted to enlarge the scope of review it was incumbent on him to take appropriate action under the statute.

■ Appeals are pure creatures of statute. Laws relating to appeals are generally accorded strict construction. An appellate tribunal derives its jurisdiction from the law. It cannot be acquired by estoppel or consent alone. Antrim v. Civil Service Commission, Iowa, 154 N.W.2d 711, 714.

■ It is well settled that an appellee who has not cross-appealed is not entitled to a decision on review more favorable than that appealed from. Robbins v. Beatty, 246 Iowa 80, 93, 67 N.W.2d 12 and cases cited therein.

II. The statute provides for de novo judicial review. Under the statute and rules that means the court shall hear the evidence and determine therefrom whether plaintiff has met the burden of establishing that the determination by the commission was unreasonable under the circumstances.

In the case before us plaintiff tendered the issue that the findings were not reasonable or authorized. Having tendered the issue the burden was on plaintiff to establish the claim by preponderance of the evidence. Rules 344(f) 5 and 6, Rules of Civil Procedure.

Appellant argues:

"Now, this law does not give the district court an opportunity to substitute its own opinion, as if it were the Labor Commissioner." That is true, but the court is not required to accept the opinion of the commissioner as a verity. It is the duty of the court to determine the isues from the evidence offered in court. The court is not an independent investigator as is the labor commissioner.

"It is bound on the judicial review of the Employment Safety Commission to merely review othe same to determine if the action of the Labor Commissioner was reasonable under the circumstances, and was authorized by the safety laws." The court is bound to review the evidence *de novo* and make a determination therefrom.

"It is bound to obey the same guidelines which are provided for the Employment Safety Commission." The guidelines are derived from the statute.

"Certain presumptions of fact also accompany the decisions of the Safety Commission as a body of practical men, technically qualified to observe both the machines and the work done, and able to apply their knowledge and experience to the guarding of machinery, operated swiftly by electric power, so that workmen may not receive injury thereby." Any presump-

tion derives from the rule that plaintiff must establish that the determinations are unreasonable.

"The plaintiff did not sustain the burden of proof to overcome these findings of the Labor Commissioner, and the findings of fact of the Safety Commission, by clear and convincing evidence." The statute does not use the words "clear and convincing evidence," or "clear and satisfactory evidence". The statute merely requires a finding that the determination is unreasonable under the circumstances.

In Buda v. Fulton, Iowa, 157 N.W.2d 336, a de novo appeal from the Department of Public Safety, we said:

"But where, as in the case now before us, the appeal is heard as an original proceeding, this presumption of regularity does not extend to factual determinations by an officer, board, agency or commission. See United States v. Maxwell, 278 F.2d 206, 209, (8 Cir.), and Hiner v. Wenger, supra, loc. cit., 91 S.E.2d [637], 639. See generally, 2 Am.Jur.2d, Administrative Law, section 753, page 654.

"And, since statutory appeal to the trial court is heard as an original proceeding, quantum of proof required as to fact issues is that a licensee establish the allegations of his petition by a preponderance of the evidence. See rule 344(f) (6), R.C.P., and Jones on Evidence, Fourth Ed., section 193, page 368." (loc. cit. 339).

We agree with the trial court that the burden was on plaintiff to establish by a preponderance of the evidence that the rulings from which appeal or review was taken were unreasonable.

In 2 Am.Jur.2d, Administrative Law, § 698 at page 597, this appears:

"A trial or hearing 'de novo' means trying the matter anew the same as if it had not been heard before [citing to Mason v. World War II Service Compensation Board, 243 Iowa 341, 51 N.W.2d 432] and as if no decision had been previously ren-

dered. Thus, it is said that where a statute provides that an appeal shall be heard de novo such a hearing is in no sense a review of the hearing previously held, but is a complete trial of the controversy, the same as if no previous hearing had ever been held, especially where the hearing is in a court of general, original jurisdiction. Where a statute provides for a trial de novo and does not provide that the findings of the administrative agency shall be conclusive or of any force, the whole matter is opened up for consideration on appeal as if the proceedings had been originally brought in the reviewing court. * * *"

Under the statute the words de novo when applied to the district court and the supreme court proceed from a different premise. In the trial in district court the evidence upon which the commission acted was not introduced. A new record was made. The court acted on the record made in court and not on a review of any previous record.

Our review, too, is de novo but it is a review of the record made in district court and is limited thereto.

III. As noted, supra, our review is de novo, i. e. based on the record before us.

We are in accord with the philosophy that workmen should be protected from injury. The statute, however, does not require that the protection be absolute. That would, for all practical purposes, be impossible of attainment. Under the statute the rules may not be unreasonable "under the circumstances" or unauthorized under the safety laws or rules. Section 88A.16, Code of Iowa.

As argued by appellant here courts do not sit as safety engineers. Our conclusions are based on the record before us.

IV. Sixteen violations of the safety code were found by the commission. Plaintiff asked for judicial review of the findings that were adverse. In a careful analysis of the problems the trial court considered each in detail. We have reviewed the record and the court's findings and conclusions.

"In equity cases, especially when considering the credibility of witnesses, the court gives weight to the fact findings of the trial court; but is not bound by them." Rule 344(f) 7, Rules of Civil Procedure.

Detailed discussion of the testimony relating to each of the many machine operations involved here would unduly extend this opinion. No useful purpose would be served. We are not attempting to establish safety rules. What appears unreasonable in the plants and operations involved here would not necessarily be unreasonable in some other plant or operation.

As we are in general agreement with the trial court's findings we will follow the same format and adopt much of the language.

V. "Violation No. 1. 'Ryerson Punch Press, Plant No. 2 Not guard at point of operation. Code Violation 88.6' The Iowa Employment Safety Commission 'by unanimous vote affirms the Labor Commissioner's position, whenever small parts are being processed over such machine.'

"The Ryerson Punch Press in question is activated by a pedal or treadle operated by the foot of the operator. The work is positioned under the die, the die being manually brought in contact with the work by a hand lever. Thereafter the punch is activated by the foot treadle. The other hand of the operator being used to support the work. There is a 'stripper'on each side of the die which prevents the work following the die after the hole is punched in the work. The 'point of operation' is the point where the die comes in contact with the work and in operation punches a hole through the metal of the work. It is urged that there is no 'practical' guard which can be installed on the machine at the 'point of operation' which would not materially affect the efficient use of the machine by the

plaintiff. The machine is used to punch holes in work of different sizes and dimensions, much of the work being quite heavy and bulky. It is not used as a production machine. The size and shape of the work varies from job to job. The machine could be equipped with electrical controls so as to require the operator to push a button in order to activate the machine. If such control be installed the operator would use both hands at a point away from the 'point of operation' at the instant of use—one hand on the lever manually holding the die down on the work, the other hand pushing the button to activate the press. However the violation charged is 'Not guard at point of operation' so this court shall consider only whether a guard at point of operation is practicable considering the work done by the machine. The 'sweep' guard, the 'pull out' device, the photoelectric 'curtain of light' and the 'basket' type guard suggested by the inspector are shown by the evidence to be not practicable for use on this machine considering the type of work done in plaintiff's machine work."

 There was evidence that a guard at the point of operation would not be practicable and would destroy efficiency in the kind of work done. Defendant offered evidence and pictures of guards on machines in other shops but the work done was not the same. The question is not what is reasonable in some other shop but what is reasonable for the work involved here.

The trial court was right.

VI. "Violation No. 2. 'Punch press West Wall of Plant 2, no guard at point of operation and no treadle guard.' The Iowa Employment Safety Commission on appeal stated: 'The Iowa Employment Safety Commission by unanimous vote affirms the Labor Commissioner. Recognizing the fact that the appellant did place a guard over the treadle prior to appeal hearing after charges were filed.'

"Violation No. 2 is concerned with a multiple punch press which can punch five holes at one time. This press is used as is the Ryerson Press to punch holes in material of varying sizes and dimensions. It is not used as a production press. This press is also activated by a foot treadle. There is no evidence that the dies are manually lowered on this press by the operator. The use of a push button to activate this machine would employ the use of one hand of the operator but not the other. In addition the inspector's charge of 'no treadle guard' seems to indicate his approval of treadle operation of this press if the treadle be guarded. The treadle is now guarded. The other suggested guards for this machine are shown by the evidence not to be practicable considering the type of work done by this machine. All of the suggested devices would materially interfere with the use of this machine, for the purposes used by plaintiff. There is no evidence that electrical controls as suggested for the Ryerson Press would occupy or require the use of both hands of the operator at the instant of use so as to improve the safety of operation of this machine. The evidence is to the contrary."

 Defendant in his reply brief complains that the trial court did not find a violation that might be the basis for a penalty incident to a treadle guard installed after notice but before hearing before the commission. This argument is without support in the record. The statute, section 88A.15, permits time for correction. Correction was made. There is no showing that correction was not timely. Complaint now is not timely.

VII. The commissioner's alleged violation #3 related to Punch Presses #3A—Plant #2. The commission found:

"Violation 88.6 No guard at point of operation.

The Iowa Employment Safety Commission, by unanimous vote, did not affirm the Labor Commissioner, due to the testimony

of Mr. Johnson in the appeal hearing transcript, page 18, wherein this press was only being used for coping pipe and it was not practical to require a guard for this specific type of operation."

The trial court found that there was no appeal from this ruling.

We agree.

VIII. "Violation No. 4. 'Portable Hand Grinders, both plants. Open Grinding wheels not enclosed by guards. Code Violation 88.6.'

The Iowa Employment Safety Commission on appeal stated: 'Note: These are portable flexible shaft grinders using a circular grinding wheel. The Iowa Employment Safety Commission by unanimous vote, affirms the Labor Commissioner that these grinders should be properly guarded when they are being used for external grinding. It being understood that we are not referring to portable hand disc type grinders equipped with approved safety discs.'

 "The appeal in this case is from the decision of the Iowa Employment Safety Commission. The decision of that Commission in respect to Violation No. 4 was limited to the use of 'portable flexible shaft grinders using a circular grinding wheel.' The evidence submitted before this court related to portable electric grinders using discs and in one instance a buffer. The decision of the Commission was further limited to the use of the grinding wheel for 'external grinding.'"

The court affirmed the commission. We agree.

IX. "Violation No. 5. 'Cincinnati 3/8" Inspection on shears Plant 1 guard not properly adjusted. Code Violation 88.7.'

The Iowa Employment Safety Commission on appeal stated: 'The Iowa Employment Safety Commission by unanimous vote affirms the Labor Commissioner because fingers on guard were worn in heaviest traffic areas plus some fingers were missing.'

 "The guard on the shear is the one provided by the manufacturer. It has been in use for many years. The guard does not move with the operation of the machine and is adjustable to a clearance of 3/4 to 7/8". The work which is 3/8" thick is inserted into the machine under this guard. The guard is at the edge of the bed and the cutting blade is two inches from the edge of the bed. The material cut by this machine varies in flatness and the clearance of the guard shown is the minimum to allow the insertion of work of all dimensions which the machine is called upon to cut in the usual work in plaintiff's plant. The fingers on the guard become worn and are sometimes broken. The worn fingers and broken fingers are routinely replaced by plaintiff. The evidence does not show that the guard was improperly adjusted as charged. Other type of guards suggested by defendant would not appreciably improve the safety of the use of this machine and would not be practicable for ripping operations."

We agree.

X. Item #6 referred to flat belt instead of a v-belt on a valve grinding machine formerly used for automotive and tractor repair. Plaintiff discontinued that work before World War II and has had no use for it since. The grinder was not being used. After the inspector's complaint it was placed in storage.

 We know of no law requiring a guard on a grinder that has not been used for over 25 years and is presently in storage.

The trial court dismissed the charge. We agree.

XI. "Violation No. 7. 'Bench grinders Plant 1 No Upper safety shields. Code Violation 88.6.'

The Iowa Employment Safety Commission on appeal held: 'A motion not to affirm the Labor Commissioner lost. The motion was made on the basis that no safety shield was needed on bench grinders because a compulsory safety goggle was in effect in the plant. (It was noted that an employee ground a tool while we were present wearing safety goggles, which were not equipped with the side shields.)'

"Plaintiff has a compulsory safety goggle program in their plants. Face shields are furnished and the employees are urged to use face shields when grinding. The bench grinders are used to grind tool bits and were once equipped with upper glass or plastic safety shields. It is urged that the shields are not practicable because they become pitted or dirty and are often broken in the use of the grinders. The court finds that installation of upper safety shields on the grinders practicable and will not materially interfere with the use of the grinders. The court further finds there is evidence of employees not using the face shields when grinding and that in such a situation the upper safety shield would be a desirable safety feature. That the shields become pitted or dirty does not make them impracticable for use in plaintiff's plants."

The evidence did not meet plaintiff's burden of showing that the requirement was not reasonable.

The trial court sustained the commission. We agree.

XII. The commissioner's claim #8 was that there was no railing around the moving table on a large Fetter Mill. The commission found:

"The Iowa Employment Safety Commission on appeal held: 'The Iowa Employment Safety Commission, by unanimous vote, does not affirm the Labor Commissioner, due to the fact that table revolutions are at a slow travel and at times operator must ride the table. There also was a chain guard attached to upright stands around the machine.'"

The court found that there was no appeal from this ruling and that the commission's disposition was final.

We agree.

XIII. "Violation No. 9. 'Fetter Mill East End of Plant #1 Open V-belt Code Violation 88.6.'

The Iowa Employment Safety Commission on appeal held: 'The Iowa Employment Safety Commission, by unanimous vote, affirms the Labor Commissioner. Note: The Commission did note that a proper guard had been placed over the V-belt prior to appeal hearing after charges of violation were filed.'

"The V-belt in question is on the back of the machine and is on a portion of the machine which moves vertically and varies from the heights of a man's neck to 15 to 20 feet from the floor. The belt is a part of mechanism which raises that part of the machine in a vertical direction. No work is done in the vicinity of the belt other than maintenance work. The V-belt is now guarded, the guard being placed on the machine after the notice of violations was served on plaintiff."

The trial court reversed the commission and dismissed the charge. We agree.

XIV. Claimed violation #10 was: "Large bench type grinders Plants 1 & 2 No upper safety shield and side plates to contain busted wheel. Code Violation 88.6."

Compliance was resisted as unnecessary. Plaintiff had a safety goggle program and a 180° wheel guard claimed to be sufficient on large custom products.

The safety glasses used were actually safety spectacles without side shields. The accident reports, mentioned supra, show that there had been an eye injury from

metal shavings. What protection had been worn at the time does not appear.

As to the grinder the court found:

"That upper safety shields of glass or plastic are practicable for use of the grinder and can be hinged so as to swing out of ,the way when large pieces are ground. Likewise the requirement that ¾th of the wheel be enclosed by the guard is reasonable and will not prevent the use of the wheel as plaintiff is accustomed since the guard can be hinged so as to swing out of the way."

The trial court affirmed the commission. We agree that there was no showing that the requirements were unreasonable.

XV. Violations #11 and 12 related to lathes in Plant #1.

"Violation No. 11. 'Large engine lathe Plant 1 No guard over head plate and chuck jaws. Code Violation 88.6.'"

"Violation No. 12. 'All lathes Plant 1 No clear plastic shield between work and operator. Code Violation 88.6.'"

The trial court found:

"Plaintiff has seven engine lathes and one turret lathe. The engine lathes have maximum operation speed of 100–150 R.P.M. None of the lathes are used for production work. Work of varying size and dimensions are turned on the lathes. The lathes are used for various operations such as for a revolving vise, for internal turnings, for external turnings, for boring, for polishing and the like. The lathes turn at relatively slow speed and with comparative low risk to the operator. The plastic shields proposed are shown by the evidence not to be practicable for the work done by the lathes in plaintiff's operation. The use of the shields would unreasonably interfere with the efficient use of the lathes in plaintiff's plants. The use of safety goggles and face shields are shown to be a sufficient protection for the operator."

XVI. Violation #13 related to an exhaust system on a heat treating oven in plant #1.

The commission by unanimous vote did not affirm the labor commissioner and gave reasons for the conclusion.

The trial court held 'there had been no appeal therefrom.

We agree.

XVII. Violation #14 was: "Lockers and showers in both plants. Plant 1 & 2 No lockers in either plant and no showers in Plant #2. Code Violation 88.3.

"The Iowa Employment Safety Commission on appeal held: 'The Iowa Employment Safety Commission affirms the Labor Commissioner on the violation of no lockers. The Iowa Employment Safety Commission does not affirm the Labor Commissioner in the violation of no showers in the one plant, as the present Iowa Law, section 88.3 does not in this instance specifically require that an employer furnish shower facilities.'"

The trial court held no appeal had been taken from this determination and that it was final. By way of comment the court noted: "That the labor performed by the workman is not such as to require a change of clothing by the workman nor does the labor performed require the use of a uniform. Toilet and washing facilities are furnished by plaintiff to their workmen. Hooks are provided for hanging clothes and shelves for storage of lunch buckets."

We agree.

XVIII. "Violation No. 15. 'Naphtha Cleaning Tank. Not in compliance with NFPA code. Violation Code 91.11.'

"The Iowa Employment Safety Commission on appeal held: 'The Iowa Employment Safety Commission, by unanimous vote, does not affirm the Labor Commissioner, on the technical grounds that

the N.F.P.A. Code has not been adopted as law in the state of Iowa (which does not necessarily mean that the naphtha tank is safe in its present condition.)' "

The trial court held there had been no appeal and that the commission's holding was final. We agree.

XIX. "Violation No. 16. 'Brown-Sharp Grinders No exhaust system and not grounded. Code Violation 88.8 and 91.-11.'

"The Iowa Employment Safety Commission on appeal held: 'Violation 88.8 and 91.11. No exhaust system and not grounded. Motion to not affirm the Labor Commissioner lost. The Labor Commissioner stands affirmed on the violation charged. Note: Neither party proved to the commission whether the machines were actually grounded. It was suggested to the Labor Commissioner that equipment be purchased for inspectors use so that a more accurate check can be made. There was no exhaust system on said grinder.'

"Plaintiff has two Brown-Sharp grinders. One being a 'wet' type, using a coolant in grinding operations. The other a 'dry surface' grinder used for tool grinding and high precision grinding. The evidence shows that both machines were adequately grounded. The inspector stated he 'received a shock on the back of his hand' and that this was the basis for his charge of 'not grounded.' Testing by Ohmmeter fails to substantiate the inspector's charge of not properly grounded. The dry surface grinder was used for tool grinding as the occasion required. No evidence of air contamination by this machine was offered."

We agree.

XX. Defendant-appellant's final complaint is error in admitting the ratings of plaintiff's workmen's compensation and liability insurance carrier and experience

modifications for the 2 years from April 1, 1966 to April 1, 1968.

There was no showing that the ratings were within the standards recognized by section 88A.11. If not the evidence would be hearsay. It had little probative value in any event.

Although we doubt the admissibility the question need not be determined. The error, if it was error, was harmless.

There is nothing in the record to suggest that the trial court gave this evidence (exhibits 58 and 59) any consideration whatsoever. No part of the ruling was based thereon.

We have given this evidence no consideration. "De minimis non curat lex."

The case is

Affirmed.

GARFIELD, C. J., and LARSON and MOORE, JJ., concur.

BECKER, MASON, RAWLINGS and LeGRAND, JJ., dissent.

STUART, J., takes no part.

The members of this court being equally divided, the judgment of the trial court stands affirmed by operation of law. (Section 684.10, Code of 1966).

BECKER, Justice (dissenting).

I respectfully dissent.

I. In this case we consider for the first time an entirely new chapter of the Code of Iowa, 1966; i. e., chapter 88A, The Iowa Employment Safety Act, which was adopted in April, 1965, approved by the Governor April 12, 1965 and, being deemed of immediate importance was made effective on publication April 22, 1965. Section 88A.1 provides: "It is the policy of this state that every employer shall furnish and maintain a safe place of employment for

employees and shall cause all places of employment to be in all respects constructed, equipped, arranged, operated and maintained so as to provide reasonable and adequate protection for the lives, health, and safety of all persons employed or working therein or frequenting the same, taking into consideration the nature of the employment and work."

It is with this declared public policy in mind that the rest of the Act was promulgated and it is with this public policy in mind that we should construe this statute and decide this case.

II. The trial court and majority first consider the manner of judicial review. They conclude the judicial review is *de novo* and this is clear from section 88A.16. Both the trial court and the majority fail to consider that while the commission's findings are being reviewed, these findings relate to the action of the Labor Commissioner. The Employment Safety Commission, in passing on the action of the Labor Commissioner, is limited to determination of whether his actions were "not reasonable" or "not authorized" by statute. The statutory scheme articulated in the chapter is overlooked.

Section 88A.14 and 88A.15 provides for enforcement and inspection by the Labor Commissioner, a pre-existing office in our state executive department. It is his duty to inspect and when he finds a violation he issues notices, followed by court action if necessary, to secure compliance.

Section 88A.16 provides for appeal to the Employment Safety Commission, a body created by the Act. Upon appropriate notice and hearing the commission's and the court's jurisdiction is determined by the following portion of section 88A.16: " * * * The commission shall affirm the action of the labor commissioner unless the commission shall find, by the affirmative vote of at least five members of the commission, that the action of the labor commissioner was not reasonable under the circumstances or was not authorized by

the employment safety laws or rules. The commission shall immediately give written notice of its decision to all parties. The enforcement proceedings with respect to which the appeal is taken shall be suspended until the decision of the commission.

"The appellant or the labor commissioner may obtain judicial review of the commission's decision by commencing an action in the district court in the county in which the alleged violation occurred, within thirty days after the commission's decision. The rules of civil procedure shall be applicable, and the district court shall hear and decide the matter de novo."

The trial court and this court have proceeded as though the review of the *Commissioner's action* is de novo. This is not so by the clear terms of the statute. The issues to be voted on by the *commission* are whether or not the *Commissioner's* action is unreasonable or unauthorized by statute. Five members (a majority of one of the eight-men commission) must find the *Commissioner's* action unreasonable or unauthorized before the *Commissioner's* action can be invalidated. This being so the *commission* was not free to substitute its judgment for that of the *Commissioner;* nor is the trial court. The issues before the court must, in the absence of statutory language to the contrary, be the same as the issues before the commission.

III. The phrase "was not reasonable under the circumstances" is first considered. No interpretation of exactly that phrase has been found; but the word "unreasonable" as it relates to the action of a Commissioner or commission has been considered. 43 Words and Phrases, 368 Cumulative Pocket Part.

In Wisconsin Telephone Co. v. Public Service Commission, 232 Wis. 274, 287 N.W. 122, 131, the court considered a statute containing somewhat similar wording and said: "Under these provisions of the statute it is the function of the circuit court to set aside the order of the Commis-

sion if it shall be found upon clear and satisfactory evidence to be (1) unlawful or (2) unreasonable. Without entering into any metaphysical discussion as to the meaning of the word 'unlawful' it is sufficient for our purpose to say that it means not according to law, and that 'unreasonable' means not based upon reason, arbitrary, capricious, absurd, immoderate or extortionate." See also, Harris v. State Corporation Comm., 46 N.M. 352, 129 P.2d 323, 328; State ex rel. and to Use of Chicago Great Western R. Co. v. Public Service Comm. of Missouri, 330 Mo. 729, 51 S.W.2d 73, 76; State ex rel. Missouri, Kansas & Oklahoma Coach Lines v. Public Service Comm., 238 Mo.App. 317, 179 S.W. 2d. 132, 135.

All of the foregoing cases deal with statutes that vary slightly from the words used by the Iowa legislature and none provide for initial determination by a Commissioner with appeal to a special commission. But all limit the appellate review where the phrases "unreasonable" and "not authorized" are used to a determination of whether the original decision has substantial support in the evidence.

Since the inquiry of the commission is limited by statute to whether the acts of the Commissioner are "not reasonable" and "not authorized", the inquiry of the court is also so limited.

The trial court relied heavily on Needles v. Kelley, Iowa, 156 N.W.2d 276 in deciding the de novo statute required a complete new decision by the judiciary. It failed to note the difference in the language employed by the legislature in the two statutes. The Needles case involved interpretation of section 321.215, Iowa Code, 1966. There the court reviewed the action of the Department of Public Safety which acted originally in making the statutory determi-

nation. No appellate process at the administrative level was involved.

Davis, Administrative Law Text, Hornbook Series, section 29.07, page 531, says: " 'Scope of review in state courts varies not only from state to state but often from agency to agency within the same state. Although the scope of review of the multifarious state and local agencies remains exceedingly diverse, the federal system is providing an effective leadership which the states are increasingly following.' " [1]

The rule here should be that the review of the commission is de novo but this review is limited to the issues before the commission, i. e., were the Commissioner's acts "not reasonable" or "not authorized". So limited the court must decide whether the Commissioner has substantial evidence in the record to support him. A fair interpretation of the record as made shows the commission was right in deciding the Labor Commissioner had substantial evidence to support his decision to cite plaintiff for eleven violations and the trial court was wrong in finding to the contrary in connection with 8 of those 11 violations.

IV. The majority opinion simply adopts the findings of the trial court. The spirit of this adoption is set by reference to the unreasonable attitude of both sides in the case; "excessive officiousness met by recalcitrance". The court overlooks the fundamental importance of this new (in Iowa) legislation and the likelihood that it will engender bitter reaction on the part of some people who are not only told to improve the safety features of their operations but are forced to do so.

The statute contemplates, in fact mandates, inspections of industrial plants by state inspectors. Mr. Gayle Adams, a qualified state inspector, first examined plaintiff's plant on June 7, 1966. On

---

1. See more extended discussion in Davis, Administrative Treatise, Vol. 4, chapter 29, which mentions both the Federal Administrative Procedure Act and the Model State Administrative Procedure Act. The need for legislation in this area is illustrated by these problems.

July 18, 1966, Mr. Adams returned with Mr. Barbe, an engineer, and made a second inspection. At this time 48 violations of safety regulations were noted in the report.

The reaction of the company to these inspections is best illustrated by the testimony of Mr. Russel Johnson, president of the company, who has been operating the company since 1923. Mr. Johnson testified: "The safety engineer for our insurance company gave some ideas of things to do, after our hassel in July. Some treadle guards and some guards that should go over belts. We carried out guards for a pulley or belt or treadle guard. This took some time for shop drawings and time to fabricate. The shop foremen were given different things to do. I can't tell you how rapidly we progressed with them. They didn't stop production to get it done, but they worked along to get all of it done. We were not particularly concerned about this list of 48 violations because the biggest part of them were ridiculous. It would be impossible for us to conform to them, and we wanted it in the district court to see what the law of Iowa was." This testimony came on redirect examination and appears to be designed to show the company's basic approach to the controversy.

Other evidence by Mr. Johnson points up the company's attitude: "I do not have a safety committee in my plant. If there is a question as to a safety guard, I do not consult with any person outside the shop. * * *

"I am a member of the Iowa Manufacturers Association but have no knowledge they have a safety manual. The woods are full of safety manuals but the only reference or book I use is from my own experience. I have not seen a face guard to protect a worker from the lathes. A face guard would protect the face in a very minor amount from metal thrown from these machines. These face guards are very small. I recall a ten by twelve inch guard which in front of one of these big machines is about the same as nothing.

" * * * All of the lathes in our shop throw off metal chips, both to the side and the bottom. Some of these chips move into the air. There has been a time or two I didn't have my glasses on and I would get a little water blister in my eye. And sometimes if you keep your shirt unbuttoned, you get a little water blister and it burns a little bit. They are hot and cause discomfort. After you have a run a lathe so long you learn to keep your shirt buttoned. * * *

"On the list of numbered violations 1 to 16, reported by the Safety Commission, we put a guard on a small bench lathe on the south side. It is a little bitty thing—a South Bend lathe. We put a guard on it after the insurance man was here. We were not particularly paying attention to that original list of 48 violations."

When asked about specific industrial accidents in his plant, Mr. Johnson displayed complete ignorance as to their happening or their magnitude. In the face of such an attitude and under a statutory mandate to enforce the law, the Labor Commissioner prepared notice of 16 violations on December 30, 1966 which are the subject of this action. Plaintiff sought and received review by the Safety Commission. The commission toured the plant, took evidence and made detailed findings as to each of the 16 claimed violations.

The Safety Commission affirmed the Labor Commissioner on violations 1, 2, 4, 5, 6, 7, 8, 10, 11, 12 and 16. The trial court reversed the commission on all but three of these items. The Safety Commission's decision on violations 1, 2, 4, 5 and 9 came on a *unanimous vote* of the commission composed of four representatives of labor and four representatives of management.

Incredibly both the trial court and this court reverse these unanimous findings in three of the five instances. This action by the courts seems incredible because by law the commission membership was made up as follows: "An employment safety com-

mission is hereby created. The commission shall consist of eight members. Four members shall represent employers, and four members shall represent employees. *Each member of the commission shall have had substantial experience in employment safety before his appointment.*" (Emphasis supplied). (Section 88A.3, Code, 1966).

" * * * When appointing members of the commission, the governor shall ascertain that each member has the qualifications stated in the chapter, that each employer member actually represents the interests of employers, and that each employee member actually represents the interests of employees." (Section 88A.4, Code, 1966).

These people *unanimously* found the foregoing 5 violations to be substantiated by the evidence, yet the court with no expertise finds to the contrary on three violations on the basis of controverted evidence. Whatever argument there might be for the court's action on the nonunanimous findings there would seem to be little room for doubt as to the unanimous actions.

V. The state prepared this case carefully. The Commissioner put on Gayle Adams, the inspector who formulated the violations. He had studied industrial arts at the University of North Dakota, worked in a machine shop for 6 years and as an inspector for the Labor Commissioner, attended three courses in industrial safety and had inspected, at that time, 400 factories. Adams' testimony that the alleged deficiencies should be corrected was buttressed by photographs showing similar machines in comparable factories which had the safety features Johnson lacked, excerpts from safety manuals and recommendations of the U. S. Dept. of Safety and the National Safety Council.[2]

The Commissioner's second witness was Ralph Roberts, for 28 years prior to retirement a supervising engineer for Continental Insurance Company of Des Moines. Roberts had made some 2000 or 3000 inspections of plants dealing with iron or steel work before he visited plaintiff's plant. He testified that from his experience the suggested changes were practicable and in the best interests of both the employer and the employees.

Lee Sample, a state safety inspector, was the Commissioner's third witness. He had worked with machines similar to those at the Johnson plant from 1947–1961 and had been a member of the shop safety committee. Sample had been with the Bureau of Labor since 1963, had attended several schools and had done independent study. He testified correction of the violations would be practical because it was done in similar factories and would lower the possibility of accidents.

Plaintiffs also employed an expert. In this sense the case developed, in part, into a "battle of experts". It would serve no useful purpose to examine the violations and evidentiary matters in detail. Suffice to say, a fair reading of the record shows substantial support for each of the Labor Commissioner's actions. Of course, the burden was on plaintiff to show the Commissioner's actions were not reasonable or not within the Safety Act.

VI. The real nub of plaintiff's argument is recognized by the trial court and this court. Plaintiffs argue that since their work is largely custom work, rather than production work, they use their equipment in so many different ways it is impractical to use safeguards on their machines. Therefore they are exempt from compliance with the statute since compliance is not practical.

But "custom" shops are not exempted from the operation of the statute. In fact the words of the statute require just the op-

2. It should be noted the statute at section 88A.11 specifically mentions the codes and standards of the "American Standards Association, United States Bureau of Standards, American Society of Mechanical Engineers, National Fire Prevention Association, American Insurance Association and other safety organizations."

posite interpretation. Section 88.7, Iowa Code, 1966, (which predates the Iowa Employment Safety Act) provides: "When any person shall remove any guard or safety appliance from any machine or other equipment, or shall so adjust or place the same as to destroy or impair its use in preventing bodily injury or safeguarding health, for the purpose of enabling the employee operating said machine to perform any special work that cannot otherwise be performed, it shall be the duty of said employee or employer to immediately replace it after such special work has been completed."

When the court holds, as it does here, that each new claim of impracticability will be examined anew by the classic judicial process without regard either to the Labor Commissioner's or the Employment Safety Commission's prior expertise, it nullifies both the spirit and the letter of the statute.

This result is apparent throughout the opinion. Reference to the first violation illustrates the judicial failure to enforce the terms of *all* the statutes. This court's treatment of violation No. 1 is found at pages 10 and 11 of the opinion and will not be repeated here. In light of section 88.7 of the Code, the contrast is startling. The commission followed the statute and required a guard whenever small work was to be performed. The trial court and this court ignored the statute and held no safeguards are required at all. This, in the face of the unanimous vote of eight citizens who were chosen for their non-pay commission service on the basis of their experience and expertise in the field!

Each reversal of the Labor Commissioner as affirmed by the Employment Safety Commission is attended by the same sort of logic. No thought is given to the declared public policy on the subject. No real consideration is given to the evidence of three well qualified state experts. Several violations were excused because the machines were guarded *after* the complaints were filed or were removed from the shop *after* the violations were reported and the hearing before the commission held.

VII. One must return to the first proposition. In this de novo trial the issues to be tried anew are not whether the judicial notion of safe industrial practices have been violated. The issue to be tried de novo is whether the Labor Commissioner's action "was not reasonable under the circumstances or was not authorized by the employment safety laws or rules".

Every act on which the trial court passed adversely was, in fact, supported by substantial evidence showing it to be reasonable and lawful.

The matters upon which the trial court failed to pass because the state failed to appeal is not of too much importance. The state will in future cases be able to cross-appeal. The difficulty is that the judicial approach in this case effectively nullifies the statute and makes future cross-appeals of little moment.

This case is not simply a fight between officious state agents and a recalcitrant employer. It is a test of the efficacy of important social legislation. The bitterness and human emotions engendered by the test are immaterial. The effectiveness of the new law is at stake. I would reexamine this case and affirm the Labor Commissioner's actions wherever substantial support for his action appears in this record.

MASON, RAWLINGS and LeGRAND, JJ., join in this disssent.