# No. A-CV-22-86

# Supreme Court of the Navajo Nation

---

Jonas Mustach, *Appellant,*

vs.

The Navajo Board of Election Supervisors, *Appellee.*

Decided January 22, 1987

---

## OPINION

*Before Tso, Chief Justice, Bluehouse and Austin, Associate Justices.*

Raymond Tso, Esq., Crownpoint, New Mexico for the Appellant; June L.
Lorenzo, Esq., Navajo Nation Department of Justice, Window Rock,
Arizona for the Appellee.

*Per Curiam.*

This is an election case in which the Appellant, Jonas Mustach,
appealed the dismissal of his Statement of Grievance by the Appellee,
Navajo Board of Election Supervisors. We heard the case on October 13,
1986, and the next day we reversed the Board and ordered a special
election.

Mustach's Statement of Grievance, which alleged four voting irregulari-
ties at Red Mesa Chapter during the 1986 primary elections, was filed on
August 22, 1986. Mustach had been a candidate for the Navajo Tribal
Council in the 1986 primary elections. The Statement was presented to the
Board at its meeting in Gallup, New Mexico on August 26, 1986. There
the Board, by a vote of six in favor and zero opposed, recommended that
the staff "further investigate this case, contact all poll officials if [sic] all
accusations are true or not." Navajo Board of Election Supervisors, *Board
Meeting Minutes*, dated August 26, 1986. The Board's recommendation
resulted in a compilation of personal statements from voters and poll offi-
cials associated with the Red Mesa Chapter.

The Board met again on September 4, 1986, when they voted, six in
favor and zero opposed, to dismiss Mustach's case. However, the Board
also allowed Mustach an option to appeal the dismissal and request "a

hearing within 15 days before the Navajo Board of Election Supervisors." Navajo Board of Election Supervisors, *Board Meeting Minutes*, dated September 4, 1986. Mustach was notified of the Board's decision to dismiss by letter dated September 9, 1986. In part the letter advised Mustach that "the statement of grievance filed by you does not contain facts to allow the Board to determine whether a recall is in order. You may request a hearing within 15 days of receipt of this letter if you so desire."

On September 9, 1986, Mustach requested a hearing before the Board. The Board granted the hearing and the hearing was scheduled for September 17, 1986. Mustach was notified of the hearing in the late evening of September 16, 1986. The following day Mustach appeared at the hearing with some hastily gathered witnesses and without counsel.

The hearing proceeded before six Board members[1]. After hearing testimony from each of the witnesses, the Board adjourned into executive session to discuss the case, and to formalize a decision. Apparently, while in executive session, three of the Board members "were told" not to vote on the final decision. Navajo Board of Election Supervisors, *Tr.* at 31. The non-voting three Board members were all members of the Navajo Tribal Council. Navajo Board of Election Supervisors, *Tr.* at 31. Upon reconvening, the remaining three Board members voted unanimously to dismiss Mustach's case. Mustach was notified of the Board's decision to dismiss the case by letter dated September 22, 1986. The following day Mustach requested a rehearing before the Board, which was denied on October 2, 1986.

Mustach filed his notice of appeal on October 7, 1986. We granted the appeal on three initial issues: (1) who are the Board of Election Supervisors and the Board of Election Commissioners; (2) what percentage of the Board / Commissioners constitutes a quorum, and what is the rule where the law is silent on quorum; and (3) whether the action taken by the Board on September 17, 1986, constitutes an official act, and is therefore valid and binding. When the Court reviewed the initial pleadings these seemed to be the only issues. However, as responsive briefs and documents were filed, and as the Court heard oral arguments, the Court became aware of a fourth issue: whether the Board had followed the procedures established for resolving an election contest in this case. The Court will decide these four issues in this Opinion.

The Navajo Board of Election Supervisors has undergone three name changes since its creation in 1966.[2] Counsel for the Board has diligently edu-

1. In 1984, the Navajo Tribal Council fixed the Board Membership at ten. Presently nine members comprise the Board with one vacancy. Three of the present nine Board members are also members of the Navajo Tribal Council.
2. These have been the names: a) Board of Election Supervisors of the Navajo Tribe; b) Navajo Election Commission; and c) Navajo Board of Election Supervisors.

cated the Court on these changes, including the Board's background in general. Consequently, the Court is now aware that the Navajo Election Commission and the Navajo Board of Election Supervisors are the same body with the latter being its official name. See *Navajo Tribal Council Resolution*, CAU-38-84.

We now address the issue pertaining to the Board's adherence to the laws governing the resolution of election contests and disputes. The Navajo Tribal Council authorized the Board to establish and enforce rules and regulations governing Navajo Nation elections. 11 N.T.C. §52. One of the duties of the Board is to hear and resolve all election contests and disputes arising from Navajo Nation elections. 11 N.T.C. §51A(7).

The Board is mandated to follow certain procedures when resolving election contests and disputes. These procedures are established at 11 N.T.C. §51A(7)(a), (b), (c), (d), and (e), and are as follows:

(a) Within ten days of the incident complained of or the election, the complaining person must file with the Board a statement setting forth the reasons why he believes the election law has not been complied with. If, on its face, the statement of election contest is insufficient under the election law, the statement shall be dismissed by the Board.

(b) If the election contest is not dismissed, the Board shall conduct a hearing within 15 days thereafter to determine if the allegations in the statement are true and supported by the law.[3] At the election contest or dispute hearing, the contestant and respondent may appear in person or through legal counsel. The contestant shall have the burden of proving the allegations contained in the statement of contest or dispute by a preponderance of the evidence, unless a more stringent burden of proof is required by other provisions of the Election Law or Tribal Code.

(c) If, after the hearing, it is unclear whether the allegations in the statement are true or not, the Board shall further investigate the matter complained about.

(d) The Board shall render its decision orally at the conclusion of the hearing or may request the parties to submit briefs within a time period specified by the Chairman of the Board, and issue a written decision thereafter.

(e) A party who wishes to appeal from a Board decision must file a notice of appeal with the Supreme Court of the Navajo Nation within ten (10) days after the decision is made.[4]

---

3. This part is subject to two interpretations: a) If the election contest is not dismissed, the hearing must be held within 15 days after the Statement of Grievance is filed; or b) If the election contest is not dismissed, the hearing must be held within 15 days after the decision not to dismiss the Statement of Grievance is entered. The interpretation of this part is not an issue before the Court, therefore clarification will be left to the Board.

4. The Board and all appellants are advised that our new Navajo Rules of Civil Appellate Procedure, Rule 7, requires that the appellant attach a copy of the Board's final decision to the notice of appeal. This means that in each case, the Board must enter a final written decision.

The function of the Court, when reviewing the action of the Board, is to determine whether the Board abused its discretion or failed to follow its procedures. *Johnson v. June*, 4 Nav. R. 79 (1983); *Williams v. The Navajo Election Commission*, 5 Nav. R. 25 (1985). While reviewing for the Board's compliance with its procedures, we must also decide if the Board in resolving the election contest or dispute, violated the rights of the contestant.

Mustach's case is replete with evidence showing that the Board failed to follow the law on resolution of election contests and disputes. The Board is required to review the Statement of Grievance on its face for sufficiency under the election law upon presentation. 11 N.T.C. §51A (7)(a). The Board then must either dismiss the Statement, or if the Statement is not dismissed, schedule a hearing on the merits of the allegations contained in the Statement. 11 N.T.C. §51A (7)(a) and (b).

The Board's first violation of the election law occurred with its failure to schedule a hearing for Mustach after nondismissal of Mustach's Statement. Instead of scheduling the required hearing, the Board committed another violation by ordering an investigation into allegations in the Statement. Under the law, an investigation succeeds the hearing, and is justified only "[i]f, after the hearing, it is unclear whether the allegations in the statement are true or not." 11 N.T.C. §51A(7)(c).

On September 4, 1986, the Board decided to dismiss Mustach's Statement. This decision was arrived at after the Board reviewed the reports compiled from the investigation. The third violation occurred when the Board failed to finalize its decision to dismiss. A final decision at this point would have allowed Mustach to immediately appeal to the Supreme Court, and the appeal would have been reviewed and heard in mid September.

Instead of entering a final decision, on September 4, the Board allowed the case to linger by advising Mustach to request a hearing before the Board within 15 days. This was followed by a letter dated September 9, 1986, which also advised Mustach to request a hearing "if you so desire." There lied the fourth violation of the election law. The law required the Board to set a hearing for Mustach. 11 N.T.C. §51A(7)(b). It does not place the burden upon Mustach, or any contestant, to request a hearing before the board.

The procedures established for resolution of election contests and disputes were not intended to be discretionary with the Board. The Tribal Council, for reasons of due process and speeding resolutions of election contests and disputes, intended that these procedures be followed. There are other obvious reasons: election ballots for the general election must be printed well in advance of the general election; resolution of a primary election contest is limited to the time between the primary and general elections; delaying resolution of the contest results in reduced campaign time for candidates; and the parties often incur unnecessary financial expenses. We hold that the Navajo Board of Election Supervisors failed to follow the election law in resolving

Mustach's Statement of Grievance. The failure to follow the election law was highly prejudicial to Mustach.

The Indian Civil Rights Act of 1968, 25 U.S.C. §1302(8), guarantees procedural due process in hearings before tribal administrative agencies. We know that the Navajo Nation does not possess a constitution. For this reason, it is incumbent upon the Navajo Nation Courts to preserve the concepts of due process of law. *Halona v. MacDonald*, 1 Nav. R. 189 (1978). Procedural due process, under the Indian Civil Rights Act, relates to the requisite characteristics of proceedings seeking to effect a deprivation of liberty or property. *Yazzie v. Jumbo*, 5 Nav. R. 75 (1986).

Procedural due process encompasses notice and an opportunity to be heard before a proper tribunal. *Yazzie v. Jumbo, Id.* Due process requires that notice of hearing be given sufficiently in advance of the scheduled date of hearing, so that the party will have reasonable time to prepare.

In this case, Mustach was notified of the hearing in the late evening and only a few hours before the scheduled time for hearing. The results were as expected. Mustach had no time to locate counsel and very little time to contact and prepare witnesses. Mustach appeared at the hearing totally unprepared to present his case. These are exactly the results which due process must protect against. These circumstances lead us to hold that, under the principles enunciated above, Mustach was not afforded due process.

The final two issues concern the Board's quorum requirement, and whether the September 17, 1986 decision of the Board was valid. We hold that the Board lacked a quorum, therefore its September 17, 1986 decision is invalid.

The rule is that in the absence of special rules of procedure adopted by a body, or adopted for it by an outside power having the right to do so, its procedure is governed by parliamentary law. 59 Am.Jur. 2d *Parliamentary Law* §3; 67A C.J.S. *Parliamentary Law* §4; *McCormick v. Board of Education, etc.*, 58 N.M. 648, 274 P. 2d 299, 308 (1954). Title 11 of the Navajo Tribal Code does not contain specific rules of procedure for meetings of the Navajo Board of Election Supervisors. Counsel for the Board has advised us that, because rules of procedure have not been adopted by the Board and by the Navajo Tribal Council, the procedure for Board meetings and hearings have been conducted using general parliamentary law. Brief for Appellee at 6. We agree that parliamentary law is appropriate where the Board has not adopted rules of procedure for Board meetings.

A quorum of a legally constituted body must be present at a meeting in order to validate its action or to transact business. 67A C.J.S. *Parliamentary Law* §6b; Summary quoted in *McCormick v. Board of Education, etc., Id.* A quorum, in the absence of a statute or rule defining a quorum, is the majority of a definite or limited number of members. 67A C.J.S. *Parliamentary Law* §6b; *Federal Trade Commission v. Flotill Products,*

*Inc.,* 389 U.S. 179, 183 (1967). Thus, five of the present nine Board members would constitute a quorum for the purpose of transacting business.

The Board's position is that, because six of the nine Board members attended the September 17, 1986 hearing, it had a legally sufficient quorum to conduct an official hearing. A plausible argument with which we disagree. The September 17 makeup would indeed be a quorum for transacting any business other than Mustach's hearing.

The Board's position fails to recognize another rule of parliamentary law: "Members disqualified because of interest cannot be counted for the purpose of making a quorum, or a majority of the quorum." 67A C.J.S. *Parliamentary Law* §6b; *Enright v. Hecksher,* 240 F. 863 (1917). Here the three Board members who were disqualfied from voting on the final decision were Navajo Tribal Council members. Mustach was also a member of the Navajo Tribal Council.

The record of the September 17, 1986 hearing reflects disqualification of the three Tribal Council members: "Members of [the] Navajo Tribal Council, Mr. Haskie, Mr. Milford and Mr. Bradley *were told* to be excused [sic] from making decision." Navajo Board of Election Supervisors, *Tr.* at 31 (emphasis ours). It does not matter that the three disqualified Board members "were present during the entire grievance hearing." Brief for Appellee at 7. The determining factor is that the three Board members were disqualified from voting on the final decision due to a conflict of interest. The conflict arose because the three disqualified Board members and Mustach were all members of the Navajo Tribal Council. To prevent a conflict, the hearing should have been conducted before a Board comprised of non-Tribal Council members. Any decision resulting from a hearing entered by a Board lacking a quorum is invalid.

After oral arguments, and on October 14, 1986, we asked the parties to suggest a remedy with special consideration for the nearness of the general election. The parties agreed that a special election for the Red Mesa chapter would be the most feasible. Thus, our order reflects that agreement, and also our own decision to redress Mustach for the Board's disregard of the election laws. The Navajo Board of Election Supervisors's decision to dismiss Mustach's Statement of Grievance is reversed, and a special election ordered.